

RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 13 2021

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**NORTHERN DIVISION**

**DOVER DAVIS JR.**
      **Plaintiff,**          **CASE NO.:**

      **v.**

**The City of Atlanta, Ga.,**
**And**
**OFFICER AARON SWANN, in his**
**Individual capacity,**
**And**               **1:21-CV-3311**
**John Doe, Public defender, in his**
**Individual capacity**
      **Defendant(s) et al**

---

## COMPLAINT

Comes now Plaintiff Dover Davis Jr., for his complaint against Defendants City of Atlanta, Officer Aaron Swann and Public Defender John Doe states as follows.

## INTRODUCTION

### 1.

This is an action for money damages, declaratory, and injunctive relief brought

Pursuant to 42 U.S.C. && 1983 and 1988, the Fourth, Sixth and Fourteenth

Amendments to the United States Constitution, and under the law of the State of

Georgia, against The City of Atlanta Police, Officer Aaron Swann, in his

individual capacity and Public Defender John Doe, in his individual capacity.

2.

Plaintiff, Dover Davis Jr., alleges that Defendant Aaron Swann threatened,

intimidated and harassed him for two days, starting on August 4, 2020 and ending

on August 5, 2020 when he unreasonably seized his property, illegally evicted

and falsely arrested and imprisoned the plaintiff via arrest without probable cause

to retaliate for a verbal complaint filed against him at Precinct 1. In addition,

Defendant Aaron Swann illegally evicted the plaintiff via arrest to satisfy the

landlord, Robert Davis, and the plaintiff's accuser, Frederick Bushau Boyd who

conspired to have the plaintiff evicted because he discovered a fraudulent scam.

3.

Officer Swann aided and abetted the conspiracy against the plaintiff, stating

to the plaintiff "they want you to move and they don't want to have anything to do

with you." Plaintiff states that Officer Swann while acting "under color of law"

deprived him of a "clearly" established constitutional right due to policies,

practices and customs implemented by the City of Atlanta Police Department

under the City of Atlanta's jurisdiction and control.

4.

The City of Atlanta Police Department illegally evicted citizens at 325

Holderness Street without court orders and that the City of Atlanta is liable under

2

the theory of respond eat Superior for violations committed by Officer Aaron

Swann. In addition, the City of Atlanta is responsible for the acts committed by

the Prosecutor's Office and the Public Defender's Office, Public Defender John

Doe.

## JURISDICTION AND VENUE

### 5.

This Court has original jurisdiction pursuant to 28 U.S. C 1331, 28 U.S.C. §

1390 and 1343 over Plaintiff's cause of action, arising under the Constitution of the

United States and 42 U.S.C. 1983 and pursuant to the Declaratory Judgment Act,

28 U.S.C 2201 and 2202. This Court has supplemental jurisdiction over plaintiff's

cause of action arising under the Georgia law pursuant to 28 U.S.C 1367. Venue

lies in the United States District Court for the Northern District of Georgia because

a substantial part of the events or omissions giving rise to Plaintiff's claims

occurred in Fulton County, Georgia. 28 U.S.C 1391(b)(2)

### Parties

### 6.

Plaintiff Dover Davis Jr. is an adult citizen and resident of the City of Atlanta,

Georgia. He is a writer and an Information Technology specialist who has a

Bachelor of Arts in Journalism and a Bachelor of Science in Telecommunications; He is certified in two IT fields. At the time of his arrest, the plaintiff was employed at a successful insurance company and his earnings would have exceeded millions of dollars over a 10-year period. Plaintiff lost his job because Officer Swann arrested and falsely charged him with two felonies and because the Prosecutor's Office three-year continuance of his case, resulting in the Insurance Commission withholding and denying his license due to felony charges and the Insurance Company withdrawing its application because the time exceeded six months.

Defendant Aaron Swann is a police officer with the Atlanta Police Department. He is sued in his individual capacity. Defendant John Doe is an unknown public defender who deprived the plaintiff of his Sixth Amendment right to counsel.

## BACKGROUND

### 7.

On August 4, 2018 about 3 p.m., Robert Davis (R. Davis), the landlord of 325 Holderness Street, plaintiff's former residence, called the Atlanta Police Department for assistance. Officer Aaron Swann responded. R. Davis knew Officer Swann personally and asked him to illegally evict the plaintiff from the residence

4

without a court order, calling the plaintiff a threat to his organization because he

sued two entities in New Jersey and that he was not going to allow the plaintiff to

damage him". R. Davis offered to refund the plaintiff's money. (Police  video,

"August 4, 2018).

### 8.

In Addition, R. Davis told Officer Swann the "police had evicted another tenant

last month, so he could evict the plaintiff". Officer Swann's video camera captured

the entire event. (Atl. Police video tape, Aug. 4, 2018)

### 9.

At that moment Officer Swann called his supervisor. When his supervisor

arrived, he informed R. Davis that the "police were not evicting tenants any longer,

so R. Davis would have to take the legal route."However, R. Davis knew of the

legal route because he was a plaintiff in Fulton and DeKalb County Magistrate

courts after filing eviction papers against hundreds in Fulton County and six

families in Dekalb County to have them evicted from his managed homes.

WSB Chanel 2 news did a story revealing a scam. In the report, the victims stated

the R. Davis said, "Do you want me to pay your rent or my car note". And the

court judge gave the eviction in his name. So, video evidence clearly evinces that

R. Davis used Officer Swann to illegally evict the plaintiff. (See exhibit "2A") and

5

(Atl. Police video tape, Aug. 4, 2018)

10.

Eventually, the supervisor left the location, leaving Officer Swann

unsupervised, but Officer Swann remained. Officer Swann became loud,

threatening and intimidating and told the plaintiff that the landlord wanted him to

leave. (Atl. Police video tape, Aug. 4, 2018)

11.

Plaintiff states, at that point, Officer Swann acted as a police officer in his

official capacity and as a private citizen or a friend of Robert Davis and Frederick

Bushau Boyd. After being subjected to threatening and intimidating behavior, the

plaintiff agreed to move only because he felt uncomfortable, threatened and

coerced. The plaintiff said "ok, I will move" to Officer Swann. (Atl. Police video

tape, Aug. 4, 2018)

On August 4, 2019, Officer Swann told the plaintiff that Frederick Bushau

Boyd and Robert Davis didn't "want to have anything to do with him" after

responding to a police assistance request by R. Davis.  Swann's statements were

personal, not professional, while performing in his official capacity. The plaintiff

thought his behavior was unprofessional, discriminatory, abusive and unfair, so he

6

filed a verbal complaint against at Officer Swann at Precinct 1 later that day,

accusing him of showing preferential treatment in favor of Frederick Bushau Boyd.

12.

When the plaintiff returned to 325 Holderness Street, he saw R. Davis,

Boyd and Debra Wade sitting on the porch in discussion. The plaintiff went

inside to prepare for work. Later, he went to work. Hours later during the early

morning of August 5, 2018, when the plaintiff returned to the residence and

entered his room, he saw a butter knife on his bedroom floor, which caused an

alarm, so he checked his bedroom door and saw a mark, indicating forced entry.

He looked around but didn't see or hear anyone. He was tired so he went to bed,

deciding to contact R. Davis later that day.

13.

According to the police report, at some time, Officer Swann and another Officer

were responding to a call at 329 Holderness Street where three residents had an

altercation involving a handgun when Boyd approached him and accused the

plaintiff of "pointing a handgun" at him which was untrue and the same accusation

made by residents at 329 Holderness Street.

Then, without supervision or contacting his supervisor, Officer Swann entered

325 Holderness Street and banged on the plaintiff's bedroom door, while

7

shouting "Police". His behavior startled the plaintiff and awoke him. He, then

slowly walked to his bedroom door half-a-sleep and drowsy from taking

medication. When the plaintiff opened his door, he saw Officer Swann standing

with his hand on his gun shouting, "Do you have a gun, own a gun, etc.

between 15 to 30 seconds or so. The plaintiff answered "no" because he was not

completely awake, shocked and overwhelmed, but did not have a gun on his person

and did not think about his gun in his car. He responded out of fear and shock. His

mind was not in a state of full comprehension

The conversation continued in the hallway. When the plaintiff stated that he did

not have a gun, his accuser Boyd stated that "the landlord went into his room

and took a picture of his hand gun clip and that is how I know he's got a gun".

The plaintiff states while he was working, sometime in the early morning of

August 5, 2018 before he returned, R. Davis entered his room without his

permission, searched it and took a picture of his handgun clip, according to Boyd

and the police report. In addition, plaintiff's handgun box with pictures of his gun

was on his dresser, in plain view. (See police report, exhibit "8A")

15.

So, R. Davis saw plaintiff's handgun box and knew he owned a handgun.

8

Boyd stated the landlord burglarized the plaintiff's room and "that was how he knew the plaintiff had a gun" when handing Officer Swann his cell phone that captured the photograph. The landlord's action was burglary and an invasion of plaintiff's privacy. Officer Swann was informed by a third party of a well-known and established law or decree, but did not respond to the violation of that law and didn't investigate it, call his supervisor or contact the landlord. He simply ignored that criminal act. Moreover, the plaintiff's rent was paid in advance and no repairs were needed, so R. Davis did not have legal justification to enter his room and take photos of his private property. (See police report, August 5, 2018)

16.

The discussion continued into the hallway while the plaintiff was waking up but still drowsy. The plaintiff was still waking up when Officer Swann became furious, yelling and screaming in a crazy terrifying manner and saying, "They are going to continue to do this to you". The plaintiff was horrified and became afraid. So, he said that he would move again, just as he had stated on August 4th, the day before. So, through force and intimidation, Officer Swann forced the plaintiff to vacate the residence.

17.

The plaintiff thought Officer Swann was about to shoot him and that he was

9

about to die. So, he grabbed items and walked to the door. When he reached his

car, he realized that his gun was inside his car. So, he decided to inform the officer

after closing his door. At that point, Officer Swann had not informed the

plaintiff of Boyd's accusation. After closing the car door, the plaintiff looked for

Officer Swann, but he had gone back to 329 Holderness Street, next door.

18.

So, the Plaintiff waited. While Swann was next door, the plaintiff had an

argument with Boyd who stopped him from entering the residence where he

legally resided. Boyd threatened the plaintiff and blocked his entrance. When

Officer Swann returned, he saw Boyd blocking the plaintiff's access to the

residence, but he did nothing. Swann did not cite or arrest Boyd for his illegal

behavior.

19.

Then, Officer Swann left for a second time, quickly. So, the plaintiff went

to his vehicle and waited with his trunk open to show Officer Swann his gun when

he returned. The plaintiff was standing behind his vehicle looking into his green

bag when he noticed another tenant watching him.

20.

Then, that tenant went to Boyd standing on the porch and spoke to him.

When Officer Swann returned, Boyd after speaking to the tenant yelled, "It's in the car". The plaintiff backed away from his vehicle, thinking Officer Swann might take a shot at him, but waited for the officer to come to him or call him.

21.

But, Officer Swann walked away for a third time, leaving the plaintiff and his handgun in his trunk. Officer Swann simply walked away to give the false impression that the plaintiff did not try to tell him about his weapon and called CID, which took another 20 to 30 minutes. Officer Swann did not verify the plaintiff's weapon was in his trunk and secure it. When CID arrived, the plaintiff was standing behind his vehicle with his trunk open.

21.

When the investigators questioned the plaintiff about his gun, he told them that it was in his car in a green bag and then pointed to the bag. After the plaintiff pointed to his gun, Officer Swann who was standing behind the plaintiff informed him of his right to own a weapon then arrested and charged him with two felonies that had no basis in the facts. At no time before the arrest did Officer Swann inform the plaintiff of Boyd's accusation and give him a chance to explain.

22.

After the plaintiff's arrest, Officer Swann and Frederick Bushau Boyd, the

11

plaintiff's accuser, looked at him and laughed while he was sitting handcuffed in

the police car. When Officer Swann returned to the police car, the plaintiff told

him that he did not understand what he had asked him because he was not fully

awake. Officer Swann said, "I know, that is why I did not charge you with

falsification". Then, the plaintiff was taken to jail.

23.

In addition, the plaintiff alleges that Officer Swann arrested three people who

were involved in a handgun pointing altercation at 329 Holderness Street. One of

the defendants was charged with two felonies, including pointing a handgun. That

defendant shared information about his case with the plaintiff while in jail.

24.

He stated that Officer Swann wrote "accused of pointing a gun" on his ticket.

In contrast, Officer Swann charged the plaintiff with two felonies but wrote

"pointed a handgun in the description. If that defendant is accurate, the

descriptions of the charges were different for the same accusation; Officer Swann's

description of the charges for the defendant arrested at 329 Holderness Street

implied the charges were unsubstantiated, but Officer Swann's description of the

charges for the plaintiff implied the charges were substantiated. At this point the

status of that defendant's case is unknown.

## Preliminary Hearing: August 6, 2018

**25.**

The next day, August 6th, the plaintiff was scheduled to attend a preliminary

hearing, but the Public Defender's Office did not take him to his hearing, so the

plaintiff was denied an opportunity to argue the facts in his case and motion to

have it dismissed.  He was denied due process. The plaintiff was denied a probable

cause hearing.

**In *Pugh* v. *Rainwater, supra.* The court certified the case as a class action
under Fed. Rule Civ. Proc. 23 (b) (2), and held that the Fourth and
Fourteenth Amendments give all arrested persons charged by information a
right to a judicial hearing on the question of probable cause. The District
Court ordered the Dade County defendants to give the named plaintiffs an
immediate preliminary hearing to determine probable cause for further
detention**

**26.**

On or about August 13, 2018, a representative from the Public Defender's

Office interviewed the plaintiff about his case. The representative asked the

plaintiff to sign a document waiving his preliminary hearing. The plaintiff saw the

document was dated August 6, 2018 which had passed, but the representative told

him to sign it. So, the plaintiff signed it because he did not have an attorney.

**27.**

In addition, on August 6, 2018, Boyd falsely presented himself as the landlord to the Landlord Tenant court to apply for a Temporary Restraining Order(TPO). The plaintiff was served the TPO while in jail, but was not taken to the hearing on August 10, 2018, so the Landlord/Tenant court judge issued a TPO for Boyd which denied the plaintiff access to the residence without police assistance. On August 21, 2018, the plaintiff was released from jail. He retrieved what was left of his property on August 23, 2018.  The Landlord/Tenant court set a second hearing for August 27, 2020. (See exhibit "3A", Temporary Protective Order, "August 6, 2018")

### 28.

On August 27, 2020, the plaintiff attended the TPO hearing. Boyd presented himself as the landlord while R. Davis sat quietly in the audience. Boyd plead the 5th amendment and did not answer the plaintiff's questions about his property and the allegations. But Judge Houston extended the TPO for two months, knowing Boyd refused to answer the plaintiff's questions. The TPO was issued and extended based on lies and falsification.

### Bond Hearing

### 29.

On August 21, 2018, after a bond hearing, the court released the plaintiff on two

Signature Bonds. As stated above, on August 23rd, he retrieved what was left of his

property. The TPO gave Boyd who falsely represented himself as the landlord

control of the plaintiff's property. Some the plaintiff's property was stolen.

## **Indictment**

### **30.**

On August 24, 2018, the plaintiff was indicted. Before he was indicted, his

public defender told him he would be indicted, after the petitioner explained his

case to her. She did not listen to the plaintiff closely, so the plaintiff believes she

made no effort to defend him in court despite the videotape evidence, the

contradictions in the police report, and the procedural violations.

## **Arraignment**

### **31.**

On November 19, 2018, the plaintiff was arraigned. His arraignment hearing

had been rescheduled three times. . The public defender, stand-in, told

the plaintiff that the prosecutor was seeking 10 years, but was offering two years.

He did not attempt to defend the plaintiff. When the plaintiff told him that Boyd

lied and had an extensive record in Florida, the public defender said "Boyd's

criminal record was not admissible". But to make matters worse, when the plaintiff

was called to plea, the public defender abandoned him and disappeared; he did not defend or represent the plaintiff. He simply vacated or exited the courtroom leaving the plaintiff without representation. He was a court assigned public defender. This is a violation of the plaintiff's Sixth Amendment Right. The plaintiff was denied another chance to present the facts of his case to a judge who could have dismissed it.

## **Frederick Bushau Boyd's Arrest**

### **32.**

On March 28, 2019, Frederick B. Boyd was arrested by the Georgia Tech Police Department and charged with Robbery by force, battery and Aggravated Assault. He spent three months in jail. The Aggravated Assault charge was dismissed and he received five years probation for the Robbery by force and battery charges. This information was either withheld or shared with the plaintiff's attorney who didn't file one motion or formerly object, which leads the plaintiff to conclude that the prosecutor and his Attorney Kenneth W. Muhammad plotted and conspired to suppress it. However, the prosecutor continued to use Boyd as a witness to secure a conviction against the plaintiff and his case was continued for almost three years.

## **Court Hearing: April 25, 2019**

### **33.**

The next hearing date was April 25 2019, the court judge ordered the prosecutor

to produce the Discovery requested. The Prosecutor's office played "Discovery

Tag" with the plaintiff's attorney. In other words, the prosecutor told plaintiff's

attorney that the public defender had discovery, but when he spoke to the public

defender, she told him that the prosecutor had Discovery.

### 34.

According to the plaintiff's attorney this went on until February 25, 2020

which was the date the current court judge ordered the prosecutor to produce

Discovery. But the plaintiff's attorney, Kenneth Muhammad did not "intensely

pursue" Discovery. He did not file one motion, make request on record in writing

or request a court date. He allowed an entire year to pass without doing anything.

He knew the prosecutor personally and had other clients. According to attorney

Muhammad, he received Discovery in late February 2020. On March 15, 2020, the

court shut down due to the Corona virus-19.

### **Court Hearing: February 2020**

### 35.

The court issued a February 2020 hearing date to discuss the status of the

plaintiff's case. The plaintiff's Attorney Kenneth W. Muhammad did not request

the hearing and did not allow the plaintiff to enter the courtroom. He told the

plaintiff to wait outside in the hallway.

The plaintiff was excluded from his hearing and did not hear what was discussed. He believes the Prosecutor and Attorney Muhammad knew about Boyd's criminal record, but did not dismiss the charges or inform the court of Boyd's criminal activity. The plaintiff's former attorney Kenneth W. Muhammad knew or should have known or been informed of Boyd's crimes and motioned for a dismissal, but he did not.

**36.**

This information was vital to the plaintiff's defense and exculpatory. Since, April 25, 2019, the plaintiff's former attorney did not file one motion or make an attempt to resolve his case. Attorney Muhammad clearly stated to the plaintiff that he was not going to file any motions. Attorney Muhammad did not discuss the facts with the plaintiff in detail or show him the police videotapes. The record is void of motions.  The plaintiff's attorney Kenneth Wade Muhammad intentionally sabotaged his case. The credibility of the plaintiff's accuser should have been raised in court.

## April 2021: New Attorney case dismissed

37.

After almost three years of nothing, the plaintiff hired a new attorney in April 2021. She submitted documents and requests for Discovery. The former prosecutor was removed. Surprisingly, the plaintiff's case had two judges and three prosecutors. His new attorney talked to the prosecutor and he agreed to dismiss the

plaintiff's case on May 20, 2021. He informed her of the plaintiff's accuser's criminal activity. The prosecutor dismissed the plaintiff's case because there was no evidence. The only basis for the prosecution was a lie made by a violent criminal who robbed and assaulted Georgia Tech college students. **(See exhibits "1A and 1B")**

At all relevant times, Defendant Officer Swann was acting under color of law and under color of authority as a police officer; And at all relevant times the City of Atlanta employees, Public Defenders including John Doe, Prosecutors including Jill Hartsfield and agents or servants of the City of Atlanta, Georgia were acting as employees of the City. Plaintiff claims damages under 42 U.S.C. 1983 for injuries set forth above against The City of Atlanta, Officer Aaron Swann, The City of Atlanta Public Defender's Office and The City of Atlanta Prosecutor's Office.

## COUNT I

### UNDER U.S.C 1983, THE CITY OF ATLANTA IS LIABLE UNDER RESPONDEAT SUPERIOR FOR OFFICER AARON SWANN BECAUSE HE ARRESTED THE PLAINTIFF WITHOUT PROBABLE CAUSE.

Plaintiff re-alleges and incorporates by reference 11-18

The plaintiff states The Fourth Amendment requires that any arrest be based on

probable cause, even when the arrest is made pursuant to an arrest warrant.

Whether or not there is probable cause typically depends on the totality of the

circumstances, meaning everything that the arresting officer knows or reasonably

believes at the time the arrest is made.

The plaintiff states that Officer Swann arrested him based on the word of a

convicted felon, whom he befriended and showed preferential treatment. And the

circumstances included a burglary, an invasion of privacy in which the landlord

took a picture of the plaintiff's handgun clip, two days of confrontation with the

landlord requesting Officer Swann to illegally evict the plaintiff the day before his

arrest, Officer Swann attacking, yelling and screaming at the plaintiff, a call to

police by the residents at 329 Holderness Street with the same accusation on

August 5, 2018, the plaintiff's half conscious state of mind during interrogation

that Officer Swann acknowledged after arresting him, Frederick B. Boyd's

admittance of his knowledge of the plaintiff handgun due to the landlord's illegal

behavior before the accusation, the verbal complaint filed against Officer Swann

before the arrest, a housing scam by the landlord and the chaos seen in Police

camera videos for August 4, 2018 and August 5, 2018.

The plaintiff states that these circumstances clouded probable cause and did not

clearly indicate that a crime had been committed.

In addition, as stated above, the plaintiff filed a verbal complaint against Officer

Swann the on August 4, 2018 for showing preferential treatment for Boyd

when he told the plaintiff, "They don't want to have anything to do with you and

they want you to move".  The plaintiff states that even after Officer Swann

swearing out a warrant and being indicted did not establish probable cause.

In the case of
*Colon,* 60 N.Y.2d at 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248. "The presumption
may be overcome only by evidence establishing that the police witnesses have not
made a complete and full statement of facts either to the Grand Jury or to the
District Attorney, that they have misrepresented or falsified evidence, that they
have withheld evidence or otherwise acted in bad faith." *Id.* at 82-83, 468 N.Y.S.2d
453, 455 N.E.2d 1248. Thus, in order for a plaintiff to succeed in a malicious
prosecution claim after having been indicted, "he must establish that the indictment
was produced by fraud, perjury, the suppression of evidence or other police
conduct undertaken in bad faith." *Id.* at 83, 468 N.Y.S.2d 453, 455 N.E.2d 1248.

The Plaintiff states the police report reveals that Boyd told Officer Swann that

the landlord went into the plaintiff's room and took a picture on his handgun clip.

Officer Swann's video camera will shows that Boyd said, "the landlord

went into his room and took a picture of his handgun clip and that's how I know

that he has got a gun".

The plaintiff states that when Boyd discovered the next door neighbors at

329 Holderness Street got into an altercation and one person pointed a handgun at

another resident, he simply "lied" and repeated what he discovered to give

Officer Swann probable cause to arrest. Officer Swann exploited this lie to retaliate

against the plaintiff for making a verbal complaint against him. Officer Swann had

issues with Internal Affairs.

## COUNT II

### UNDER U.S.C 1983, THE CITY OF ATLANTA IS LIABLE UNDER RESPONDEAT SUPERIOR FOR OFFICER AARON SWANN'S VIOLATION OF THE PLAINTIFF'S FOURTEENTH AMENDMENT RIGHT TO "EQUAL PROTECTION UNDER THE LAW".

Plaintiff re-alleges and incorporates by reference 1-35

   The Plaintiff states the Fourteenth Amendments guarantees that:
All persons born or naturalized in the United States, and subject to the
jurisdiction thereof, are citizens of the United States and the State
wherein they reside. No State shall make or enforce any law which
shall abridge the privileges or immunities of citizens of the United
States; nor shall any State deprive any person of life, liberty, or
property, without due process of law; nor deny to any person within its
jurisdiction the equal protection of the laws.

   Officer Swann assaulted Plaintiff by unlawfully brandishing his weapon or

attempting to injure him with apparent present ability to effectuate the injury under

circumstances creating fear of imminent peril when he brandished his weapon

while shouting and screaming at the plaintiff.

The plaintiff believes that Officer Swann's behavior was due to revenge for the complaint filed against him. The plaintiff thought Swann was going to kill him. Officer Swann violated the plaintiff's Fourteenth Amendment Right by denying him equal protection under the law. U.S.C 1983 cases include violations that do not manifest physical violence by police officers.

## COUNT III

### UNDER 42 U.S.C. 1983, THE CITY OF ATLANTA FAILED TO MONITOR ITS POLICE DEPARTMENT AND OFFICER AARON SWANN IS LIABLE UNDER RESPONDEAT SUPERIOR FOR MAINTAINING UNCONSTITUTIONAL POLICIES AND CUSTOMS THAT VIOLATED CIVIL RIGHTS.

Plaintiff re-alleges and incorporates by reference  9

Prior to August 5, 2018, the Atlanta Police Department developed and maintained polices or customs exhibiting deliberate indifference to the constitutional rights of Black persons in the City of Atlanta, which caused the violation of Plaintiff's rights. It was the policy and/or custom of the Atlanta Police Department to fail to exercise reasonable care in hiring its police officers, including Defendant Swann, thereby failing to adequately prevent constitutional

violations on the part of its police officers. Indeed, current examples of police

murdering citizens, tasing college students and in the past murdering senior

citizens while falsifying facts are just some examples of the plaintiff's

assertion.

In Pembaur v. City of Cincinnati ET Al., 473 U.S. 469 (1986), the Supreme Court
stated,

....With this understanding, it is plain that municipal liability may be imposed for a
single decision by municipal policymakers under appropriate circumstances. No
one has ever doubted, for instance, that a municipality may be liable under § 1983
for a single decision by its properly constituted legislative body — whether or not
that body had taken similar action in the past or intended to do so in the future —
because even a single decision by such a body unquestionably constitutes an act of
official government **policy**.

In precinct 1, It was the policy/or custom of the Atlanta Police Department to

illegally evict citizens without court orders based on inadequate supervision and

training of its police officers. Indeed, the Atlanta Police Department evicted

citizens at 325 Holderness Street in Atlanta, Ga. prior to the plaintiff's arrest and

illegal eviction.

In fact, Officer Swann's supervisor stated after being asked to illegally evict the

plaintiff that "we are no longer doing that". As a result of the above described

policies and customs, police officers in Precinct 1 of the City of Atlanta, including

Defendant Swann believed their actions would not be properly monitored by

supervisory officers and their misconduct would not be investigated or sanctioned, but would be tolerated. As evidence of this fact, Internal Affairs cleared Officer Swann of all wrongdoing in this case.

The above described summary of the polices and customs demonstrate a deliberate indifference on the part of the Officer Swann, City of Atlanta and the Atlanta Police Department to the constitutional rights of persons within the City of Atlanta, which led to the violations of Plaintiff's rights alleged herein. Officer Swann and other police officers evicted a tenant just 30 days prior to August 5, 2018. So, there was a clear practice or custom of illegally evicted tenants at R. Davis's request.(Police video camera: August 4, 2018)

## COUNT IV

## UNDER 42 U.S.C. 1983, THE CITY OF ATLANTA FAILED TO MONITOR ITS POLICE DEPARTMENT AND OFFICER AARON SWANN AND IS LIABLE UNDER RESPONDEAT SUPERIOR FOR THE PLAINTIFF'S ILLEGAL ARREST AND FALSE IMPRISONMENT.

Plaintiff re-alleges and incorporates by reference 21.

Defendants Swann illegally arrested and falsely imprisoned Plaintiff by unlawfully detaining him without probable cause based on the word of a convicted felon who six months later robbed and assaulted Georgia Tech college

25

students. Defendant Swann had no reason to detain or confiscate the Plaintiff

property because he did not have evidence that a crime had been committed by the

plaintiff and did not reasonably believe that Plaintiff had committed an offense.

Swann even stated he knew the plaintiff was not fully awake when being

questioned which was why he didn't charge him with falsification. In addition,

Swann responded to R. Davis', landlord, request to evict the

plaintiff on August 4, 2018 and knew there was conflict, so any comment should

have been met with doubt and suspicion, so probable cause relating to any

accusation was not clearly established.

## COUNT V

## UNDER 42 U.S.C. 1983, THE CITY OF ATLANTA FAILED TO MONITOR ITS POLICE OFFICERS AND IS LIABLE UNDER RESPONDEAT SUPERIOR FOR OFFICER SWANN'S THREAT TO THE PLAINTIFF'S LIFEWHICH VIOLATES THE FOURTEENTH AMENDMENT.

Plaintiff re-alleges and incorporates by reference 13.

Defendant City of Atlanta is liable for the assault via intimidation causing fear

because Officer Swann actions caused a "state-created danger" to the plaintiff due

to the fact that Officer Swann could have  murdered the plaintiff at any time. And

this state of danger is in addition to the false imprisonment committed against the

Plaintiff by Officer Swann.

The Plaintiff states The City of Atlanta employed the officer, who

committed the assault via intimidation causing fear and who falsely imprisoned the

plaintiff while acting under color of law. In addition, Swann failed to arrest R.

Davis for burglary and overcharged the plaintiff for a crime that he did not commit.

Again, the plaintiff states, Officer Swann's violation of the plaintiff's rights was

motivated by revenge due to a verbal complaint filed by the plaintiff on August 4,

2018.

## COUNT VI

## DUE TO 42 U.S.C. 1983 THE CITY OF ATLANTA IS LIABLE UNDER RESPONDEAT SUPERIOR FOR ALLOWING THE PUBLIC DEFENDER'S OFFICE TO DENY THE PLAINTIFF REPRESENTATION UNDER THE SIXTH AMENDMENT.

Plaintiff re-alleges and incorporates by reference 31.

**Amendment VI**
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

Defendant City of Atlanta is liable for the violation of plaintiff's Sixth

Amendment Right by the Public Defender. The City of Atlanta employed the

27

Public Defender, John Doe, who failed to represent the plaintiff and abandoned

him during his arraignment. The plaintiff was entitled to court assigned

representation by law. The Public Defender's behavior violated the Plaintiff's

Sixth Amendment's Right to Counsel.

In **Gideon v. Wainwright 372 US 335, 83 S. Ct. 792, 9L. Ed 2d 799, Supreme Ct 1963, the Court** held ''that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him.''

In Powell v. Alabama, 287 US 45 - Supreme Court 1932, the court set aside  the convictions of eight black youths sentenced to death in a hastily carried-out trial without benefit of counsel. Due process, Justice Sutherland said for the Court, always requires the observance of certain fundamental personal rights associated with a hearing, and "the right to the aid of counsel is of this fundamental character." This observation was about the right to retain counsel of one's choice and at one's expense, and included an eloquent statement of the necessity of counsel. "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crimes, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one.

**In Pembaur v. City of Cincinnati ET Al., 473 U.S. 469 (1986),** the Supreme Court stated,

....With this understanding, it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body — whether or not that body had taken similar action in the past or intended to do so in the future — because even a single decision by such a body unquestionably constitutes an act of official government **policy**.

## COUNT VII

### DUE TO 42 U.S.C. 1983 THE CITY OF ATLANTA IS LIABLE UNDER RESPONDEAT SUPERIOR FOR ALLOWING THE PUBLIC DEFENDER'S OFFICE TO DENY THE PLAINTIFF HIS PRELIMINARY HEARING TO DETERMINE PROBABLE CAUSE, WHICH IS A VIOLATION OF THE FORTH AND FOURTEENTH AMENDMENTS AND DUE PROCESS OF LAW.

Plaintiff re-alleges and incorporates by reference 25.

The plaintiff was denied a probable cause hearing. The Public Defender's

Office did not take him to his Preliminary Hearing, but forced the plaintiff to sign a

"waiver" waiving his Preliminary Hearing.  In addition, the official record was

falsified to include a "Preliminary Hearing" that never took place.

**In Gerstein v. Pugh ET AL, 420 U.S. 103(1975),** the Supreme Court stated, "...
that the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention, and we accordingly affirm that much of the judgment.

The Court continued.. "These adversary safeguards are not essential for the probable cause determination required by the Fourth Amendment. The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. This issue can be determined reliably without an adversary hearing. The standard is the same as that for arrest.[21] That standard—probable cause to believe the suspect has committed a crime—traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these informal modes of proof.

"Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard. These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property."

**In Pembaur v. City of Cincinnati ET Al., <u>473 U.S. 469</u> (1986),** the Supreme Court stated, "With this understanding, it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body — whether or not that body had taken similar action in the past or intended to do so in the future — because even a single decision by such a body unquestionably constitutes an act of official government **policy**".

## COUNT VIII

### DUE TO 42 U.S.C. 1983 THE CITY OF ATLANTA IS LIABLE UNDER RESPONDEAT SUPERIOR FOR THE PROSECUTOR VIOLATING THE PLAINTIFF'S CIVIL RIGHTS AND ALLOWING THE PROSECUTOR TO MALICIOUSLY PROCECUTE, COLLUDE, CIRCUMVENT JUSTICE AND FAIRNESS AND PLOT WITH THE PLAINTIFF'S ATTORNEY TO DELAY THE TRIAL BEYOND TWO YEARS AND WITHHOLD EXCULPATORY EVIDENCE OR INFORMATION SUPPORTING THE PLAINTIFF'S INNOCENCE.

Plaintiff re-alleges and incorporates by reference 32-36.

The Plaintiff states the Prosecutor failed to disclose evidence which would have exculpated the plaintiff and continued to prosecute him without sufficient probable cause for almost three years. Defendant City of Atlanta is liable for Prosecutor's malicious prosecution.

The Plaintiff states the prosecutor continued his case for almost three years without basis and believes she conspired with his attorney Kenneth W. Muhammad who did not file one motion on the plaintiff's behalf to delay his case beyond the two-year statute of limitations for a civil case and intentionally excluded any facts in his case which would have made the plaintiff's post-conviction appeal impossible and render his civil lawsuit subject to dismissal due to the lack of "Material Facts". This activity shows a conspiracy and is supported by "no activity" in the official record.

The Plaintiff asserts that private citizens who do not work for the government can assist and conspire with government officials to deprive a citizen of civil rights. The plaintiff's attorney provided ineffective assistance of council.

The Plaintiff states that in March 2019, Fred Bushau Boyd, plaintiff's accuser, robbed and assaulted Georgia Tech Students. He was charged with Robbery by

Force, aggravated assault and simple battery. The prosecutor in his case dropped

the assault charges and gave him probation for robbery and simple battery, but this

information was not formerly presented to the court by plaintiff's attorney or the

prosecutor. The prosecutor's continuing the plaintiff's case, knowing that

Frederick Bushau Boyd, the so-called victim had committed violent crimes against

citizens, was malfeasance and evil. Her decision contradicted every tenet of Justice

and Fairness. The plaintiff could have recovered and returned to his job.

**In Pembaur v. City of Cincinnati ET Al.,** <u>473 U.S. 469</u> (1986), the Supreme
Court stated, "With this understanding, it is plain that municipal liability may be
imposed for a single decision by municipal policymakers under appropriate
circumstances. No one has ever doubted, for instance, that a municipality may be
liable under § 1983 for a single decision by its properly constituted legislative body
— whether or not that body had taken similar action in the past or intended to do
so in the future — because even a single decision by such a body unquestionably
constitutes an act of official government  **policy".**

**As a direct and proximate result of the acts of Defendants, Plaintiff suffered
the following injuries and damages:**
   a. Violation of his constitutional rights under the Fourth and Fourteenth
      Amendments to the United States Constitution to be free from an
      unreasonable  seizure of his person
   b. False arrest and imprisonment without probable cause
   c. Malicious prosecution without probable cause
   d. Loss of valuable personal property: personal creative writings and books
   e. Loss of his physical liberty; freedom: imprisoned for 17 days
   f. Intentional and offensive threats and intimidation

g. Fear of imminent peril resulting from the officer's brandishing his weapon
h. Loss of job, income and loss of unearned income and permanent employment for three years
i. Damage to his reputation
j. Anger, frustration, humiliation for almost three years
k. Poverty, homelessness

The action of Defendants violated the following clearly established and well settled federal constitutional rights of Plaintiff:

a. Freedom from unreasonable seizure of his person and false arrest: Fourth Amendment and Fifth Amendment
b. Denial of due process relating to a preliminary hearing
c. Denial of representation during arraignment: Sixth Amendment
d. Denial of equal protection: Fourteenth Amendment
e. Arrest and imprisonment without Probable cause
f. Victim of Prosecutorial Malicious prosecution and Public Defender abandonment
g. Victim of a conspiracy to falsely imprison without cause or reason

## **PRAYER FOR RELIEF**

**WHEREFORE, Plaintiff respectfully requests the Court: THE PLAINTIFF IS ENTITLED TO THE FOLLOWING RELEIF.**

A. Enter judgment in favor of Plaintiff and against Defendants.

B. Award Plaintiff compensatory, declaratory and punitive money damages against Defendant Swann and Public Defenders and the City of Atlanta in the amount $4,000,000 for loss of job, wages and future wages; for loss of employment from 2018 to 2021 because the plaintiff could not pass a background check to secure a professional job in his fields of study.

C. Award Plaintiff's counsel reasonable attorneys' fees and costs pursuant to 42 U.S.C 1988 and any other applicable provisions of law;

D. Enter a permanent injunction, upon proper motion, requiring Defendant City of Atlanta to adopt appropriate policies related to the hiring and supervision of its police officers, public defenders and prosecutors.

E. Grant to Plaintiff such other and further relief as may be just and proper under the circumstances, including but not limited to appropriate injunctive relief.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial, pursuant to the Seventh Amendment to the Constitution of the United States, as to all claims for damages.

## CONCLUSION

Officer Aaron Swann did not have probable cause to arrest. The Prosecutor did not have probable cause or a basis to prosecute for almost three years. In the plaintiff's case, there were procedural and substantive violation, for example the plaintiff did not receive a Preliminary Hearing, was abandoned by his attorney during his arraignment and was charged with two felonies without probable cause for allegedly "pointing a gun" when others were charged with a "misdemeanor" for the same accusation. Officer Aaron Swann charged and arrested the plaintiff without probable cause based on a request from the landlord and lies from

34

a convicted felon who both wanted the plaintiff arrested to stop him from taking action or reporting the "scam" that had already been reported by Channel 2 news. The plaintiff was then taken to jail and denied a Preliminary Hearing that should have resulted in his case being dismissed. He was released 17 days later and awaited arraignment. During his arraignment, his Public Defender suggested that he take a plea deal that would have incarnated him for two years.

But, when the plaintiff said no, the public defender abandoned him and did not return to court. Shortly thereafter, he was indicted on two felony charges that his public defender told him he would be before the indictment. Short thereafter, in March of 2019, his accuser robbed and assaulted Georgia Tech college students, but his case was continued and no information about Frederic Bushau Boyd's criminal activity was shared with him or formerly with the court. The plaintiff's attorney did not file one motion or document on the plaintiff's behalf.

The plaintiff asserts that the prosecutor and his attorney colluded and plotted, hoping he would be re-arrested, forfeit bond which would have put him in a position to plea or face many years in prison for a crime he did not commit. Furthermore, he has experienced pain and suffering; He lived in poverty for almost three years unable to secure adequate employment or housing. He had to sleep on

35

and off in his vehicle in the cold, heat and during the pandemic until the day his

case was dismissed. Now, he is attempting to clear his record and go forward. His

plight and hardship was created by Officer Swann and aggravated and continued

by the Public Defender's Office, The Prosecutor's Office and The City of Atlanta.

The plaintiff states his case history is clear of motions and facts, but the Police

camera videos show what really happened and cannot be fabricated or hidden.

Lastly, the plaintiff states to this Court that he searched for an attorneys, but was

unable to find one as of today because his former attorney Kenneth W. Muhammad

greatly damaged his case that discouraged them from taking it. Also, he faced an

attorney network. But, he will continue his search.

Oh, Distinguished Judges of District Court, the plaintiff states, the Defendants'

behavior and actions were EVIL and aimed at putting an innocent person in

prison.

Respectfully submitted,

Dover Davis Jr.,
Pro Se
P. O. Box 150485
Atlanta, Georgia 30315
470.305.9124

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NORTHERN DIVISION**

# EXHIBITS:

| NAME | NUMBER |
|------|--------|
| 1.  Case Dismissal Order | 1A |
| 2.  Frederick B. Boyd's Felony Charges | 1B |
| 3.  Non-Profit scam report | 2A |
| 4.  Frederick B. Boyd TPO | 3A |
| 5.  Dover Davis Job Acceptance Letter | 4A |
| 6.  Dover Davis Job document | 5A |
| 7.  Dover Davis Pay Structure | 6A |
| 8.  Dover Davis Resume | 7A |
| 9.  Indictment Documents including Police Report | 8A |
| 10. Waiver of Arraignment | 9A |
| 11.Notice of Claim Affidavit | 10A |

**Dated: August 12, 2021**

Fulton County Superior Court
***EFILED***NY
Date: 5/20/2021 1:37 PM
Cathelene Robinson, Clerk

18CP177431

This indictment upon motion of Asst. Dist. Atty.

John Wirtm and for satisfactory reasons, is

hereby Nol. Prossed. In open court this the 20

day of ___May___ , 20 21

Rachelle Carnesale

JUDGE, S.C., A.J.C.

**INDICTMENT**

TuS EJI

Clerk No. 18 SC 161504

**FULTON SUPERIOR COURT**

THE STATE OF GEORGIA

V.

**DOVER DAVIS**
DA #: 18DA08996

FILED IN OFFICE

AUG 24 2018

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

1   **AGGRAVATED ASSAULT WITH A DEADLY WEAPON** O.C.G.A. §16-5-21
2   **POSSESSION OF FIREARM DURING COMMISSION OF A FELONY** O.C.G.A. §16-11-106

BILL

August 24, 20 18

Grand Jury Foreperson

PERSONID: 6534792

**PAUL L. HOWARD, JR., District Attorney**

| The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty. | The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty. | The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty. |
|---|---|---|
| _____ Defendant | _____ Defendant | _____ Defendant |
| _____ Attorney for Defendant | _____ Attorney for Defendant | _____ Attorney for Defendant |
| _____ Assistant District Attorney | _____ Assistant District Attorney | _____ Assistant District Attorney |
| This ___ day of _____, ____ | This ___ day of _____, ____ | |

This indictment upon motion of Asst. Dist. Atty. and for satisfactory reasons, is hereby Nol. Prossed. In open court this the ___ day of _____, 20___

JUDGE, S.C. A.J.C.

1 A

___ Amended Sentence ___ Modified Sentence ___ Revoked 1st Offender Sentence ___ Re-Sentence

## IN THE SUPERIOR COURT OF FULTON COUNTY, STATE OF GEORGIA

**STATE OF GEORGIA**
**vs**

**FREDERICK BUSHAU BOYD**
**BOOKING:1906101**

**CRIMINAL ACTION #:**
**19SC166915**

**MAY-JUNE Term of 2019**

Clerk to complete if incomplete:

OTN(s):
DOB: 12/26/1990
GA. ID#:

URGENT
FILED IN OFFICE

MAY 31 2019

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

**Final Disposition:**
**FELONY With PROBATION**

First Offender/ Conditional Discharge entered under :
___ O.C.G.A. § 42-8-60      ___ O.C.G.A. § 16-13-2
___ Repeat Offender as imposed below          **PLEA:**                                    **VERDICT:**
___ Repeat Offender Waived          ___ Negotiated   **X** Non-negotiated          ___ Jury          ___ Non-Jury

### The Court enters the following judgment:

| Count | Charge (as indicted or accused) | | Disposition Guilty; Not Guilty; Guilty-Alford Guilty-Lesser Incl; Nol Pros; Nolo Contendere; Dead Docket; 1st Offender; 1st Offender- Alford Order | Sentence | Fine | Concurrent/ Consecutive, Merged, Suspended Commute to Time Served |
|---|---|---|---|---|---|---|
| 1 | Robbery by force | 16-8-40 | GUILTY | 5 YRS PROBATION | 0.00 | |
| 2 | Aggravated Assault (means likely to cause serious injury) | 16-5-21 | NOL PROS | | | |
| 3 | BATTERY | 16-5-23.1 | GUILTY | 12 MONTHS PROBATION | | CONCURRENT W/ CT 1 |

The Defendant is adjudged guilty or sentenced under First Offender/Conditional Discharge for the above-stated offense(s); the Court sentences the Defendant to confinement in such institution as the Commissioner of the State Department of Corrections may direct, with the period of confinement to be computed as provided by law.

**Sentence Summary:** The Defendant is sentenced for a total of *[5 YRS  ]*, with the first *[  ]* to be served in confinement and the remainder to be served on probation; or **[ X ]** to be served on probation.

19SC166915     FREDERICK BUSHAU BOYD

1B

# Nonprofit accused of scamming families out of rent money

By: Wendy Halloran, WSBTV.com

Updated: Aug 13, 2018 - 11:19 AM



0

Nonprofit accused of scamming families out of rent money

**DEKALB COUNTY, Ga.** - Six families said they were taken advantage of by a nonprofit organization they thought was designed to help prevent homelessness.

**>> Read more trending news**

Tenants who rent a Decatur home through the nonprofit Onnie's House told Channel 2's Wendy Halloran they are furious, because in four days they'll have nowhere to go -- and they feel defrauded by the very organization that promised to help put a stop to homelessness.

Content Continues Below

"We felt like they were legitimate. It was Onnie's House. Their purpose is to stop homelessness, bring in families and help. And that turned out to be the furthest thing from what they actually did," renter Charlesa Walker said.

On fliers from the organization, Onnie's House said it dedicates itself to eliminating homelessness in metro Atlanta. Its ultimate goal is to rent out a home to house people who need shelter.

In June, six families moved into a home in Decatur through the organization.

After paying rent of about $650 per month, which includes utilities and some food, they were served with an eviction notice by DeKalb County marshals in late July.

2A

The renters are accusing the man behind Onnie's House, Robert Davis, of taking their money for his own personal gain.

"We were told, the quote was, 'You think I'm gonna pay your rent and not my car note?' So, basically, all of my money that we were using for rent was used for their personal bills and their whatever they wanted it to be used for," Walker said.

"That is so selfish, so selfish. That's just despicable. I can't even speak on it," renter Connie Brown said.
Now, the renters have be out by Aug. 14.

"I feel like we were totally used and I'm just very upset because there is no place for me and my family to go," Brown said.

Halloran spoke to Davis over the phone Saturday night.

He denied he was scamming the families and said they all didn't pay what they were supposed to pay.

He claimed the owner of the home would not take a partial payment and told Halloran he still has their money, but used some of it to pay utilities and for landscape work at the home.

"I feel like we were totally used and I'm just very upset because there is no place for me and my family to go," Brown said.

Halloran also spoke with the home's property manager and he confirmed Davis did not pay the rent, and he took him to court and got the eviction.

That eviction is in Davis' name. Come Wednesday, the families will have nowhere to go.

2B

"B"

Fulton County Superior Court
***EFILED***QW
Date: 8/6/2018 1:43 PM
Cathelene Robinson, Clerk

SC-26

# FAMILY VIOLENCE

## THE SUPERIOR COURT FOR THE COUNTY OF FULTON
## STATE OF GEORGIA

Fred Boyd _____,     :
Petitioner,                    :     Civil Action File   2018CV308701
                               :
v.                             :
                               :     No. _18217107S_____
Dover Davis Jr _____,    :         C.I.C
Respondent.                    :

### PETITION FOR TEMPORARY PROTECTIVE ORDER

The Petitioner, pursuant to the Family Violence Act O.C.G.A. § 19-13-1 et seq., files this Petition for a Family Violence Protective Order and in support shows the Court the following:

1.  Petitioner is a resident of ___Fulton___ County, Georgia, and is 18 years of age or older or is an emancipated minor. Petitioner's year of birth is _12/26/90_ sex _M_, and race _African American_

2.  Respondent is a resident of _325 Holderness St_ County, Georgia, and may be served at ___Atlanta___ ~~ga~~ _____, Georgia. Jurisdiction and venue are proper with this Court.

OR

2.1  Respondent is a resident of the State of _____ Under O.C.G.A. § 19-13-2(b), jurisdiction and venue are proper with this Court because the abuse occurred in the State of Georgia in _____ County and/or Petitioner lives in _____ County. Respondent is subject to the jurisdiction of this Court and may be served at _____

3.  Petitioner and Respondent are:
    ____ 1. Present or past spouses
    ____ 2. Parents of the same child/ren
    ____ 3. Parent and child/ren
    _✓_ 4. Persons who used to live in the same household
    ____ 5. Persons currently living in the same household
    ____ 6. Foster parent and foster child
    ____ 7. Stepparent and stepchild

4.  On or about _Aug 5_____, 20_18_, Respondent committed the following acts of family violence against Petitioner and/or the minor child/ren _Agg Assoult With Firearm / Stalking_____

Rev. 9/2015

3A

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Petitioner is in reasonable fear for Petitioner's own safety and/or the safety of the minor child/ren.

5.  At other times Respondent has committed other such acts, including but not limited to (approximate dates and what happened):
    _Stalking_____
    _____
    _____
    _____
    _____
    _____

6.  There is a substantial likelihood that Respondent will commit such acts of violence against Petitioner and the minor child/ren in the immediate future if relief is not granted as provided pursuant to O.C.G.A. § 19-13-4.

**Check ☑ the paragraphs below that apply to your case and fill in the information needed or enter <u>N/A</u> if it does not apply to you.**

N/A 7. Petitioner and Respondent have _Ø_ child/ren under the age of 18. Their names, years of birth, sex, and ages are _____
_____

These child/ren have lived only with Petitioner and Respondent for the past five (5) years. (If the child/ren have not resided only with Petitioner and Respondent for the last five years, give the names of the persons, their addresses, and the dates the child/ren resided with them
_____
_____
_____

3B

Check ☑ the paragraphs below that apply to your case and fill in the information needed or enter N/A if it does not apply to you.

___✓___ 8. The parties are not married and Respondent _____ (has OR has not) legitimated the child/ren of the parties.

__N/P__ 9. Petitioner (does OR does not) have knowledge concerning custody or claims of custody concerning these child/ren including divorce, separation, juvenile, and DFCS cases. Specify court and type of case (if applicable) _____

__N/P__10. Petitioner has the following minor child/ren living with Petitioner whom Petitioner wishes protected from Respondent and including in the Protective Order (names and ages):

_____

_____

_____

___✓___ 11. Petitioner believes Respondent has a criminal record and has committed the following crimes (approximate dates and crimes): Battery , Stalking
_____

___✓___ 12. Petitioner fears that if Respondent learns of Petitioner's current address that Respondent will hurt or injure Petitioner or Petitioner's immediate family. Petitioner requests that Respondent not be informed of Petitioner's current residence.

___✓___ 13. Petitioner is dependent upon the family residence for shelter for Petitioner and/or minor child/ren and asks that Petitioner be granted the temporary use and possession of said residence, located at  335 Holderness St SW 30310 , together with all personal property contained therein with the exception of Respondent's personal clothing.

__N/P__14. Petitioner and the minor child/ren are dependent upon the Respondent for support and requests that Petitioner be awarded temporary child support.

__N/P__15. Petitioner is dependent upon Respondent for support and asks that Petitioner be awarded temporary support.

__N/P__ 16. The minor child/renare currently in the custody and control of Petitioner/Respondent and Petitioner asks for legal and physical custody.

___✓___ 17. Petitioner asks that the following assets/property of Petitioner be returned by Respondent: Keys to Home / front Door
_____

Rev. 9/2015

3C

THEREFORE, Petitioner asks:

(a)   That the Court set a hearing no later than thirty (30) days from the filing of the Petition and direct Respondent to appear before this Court and show any reasons why the demands of the Petitioner should not be granted;

(b)   That the Respondent be served a copy of this Petition and Ex Parte Protective Order as required by law;

(c)   That this Court direct law enforcement to enforce this Order;

(d)   That this Court direct Respondent to stop abusing, harassing and intimidating Petitioner and/or Petitioner's child/ren;

(e)   That this Court restrain and enjoin Respondent from having any direct or indirect contact with the Petitioner and/or Petitioner's child/ren;

(f)   That this Court order that Respondent be enjoined from approaching within _200_ **yards** of Petitioner;

(g) That this Court make findings of fact and conclusions of law concerning the issues in this case;

(h) That Petitioner have such other and further relief as the Court may deem just and proper;

(i) That this Court issue Family Violence Ex Parte and Twelve Month Protective Orders to:

**Check ☑ the paragraphs below that apply to your case and fill in the information needed or enter N/A if it does not apply to you.**

_N/A_ award Petitioner temporary sole legal and physical custody of the minor child/ren;

_✓_ order Respondent to vacate the family residence at _325 Holderness St SW, 30310 Atlanta, GA_ _____ instanter;

_N/A_ grant Petitioner exclusive temporary use and possession of the family residence at _325 Holderness St SW Atlanta GA 30310_ and all personal property of the parties located at the family residence and Petitioner's current residence with the exception of Respondent's personal clothing; that law enforcement _police_ (sheriff or police department) assist Petitioner in returning to the family residence and in ensuring that the Respondent vacates said residence and that all keys, garage door openers and other security devices to the family residence are secured and given to the Petitioner;

Rev. 9/2015



_N/A_ order Respondent to provide suitable alternate housing for Petitioner and/or Petitioner's children;

_✓_ order Respondent to stay away from Petitioner's and/or Petitioner's minor child/ren's place of residence, place of employment, and/or school;

_N/A_ order Respondent's visitation with the minor child/ren be limited to no visitation or

_____

_____ ;

_N/A_ order Respondent to pay to Petitioner child support for the minor child/ren;

_N/A_ order Respondent to pay spousal support for Petitioner;

_N/A_ award Petitioner costs and attorney's fees for having to bring this action;

_✓_ order that Petitioner's current address be kept confidential;

_N/A_ enjoin and restrain Respondent from selling, disposing or encumbering, trading, contracting to sell, or otherwise disposing or removing from the jurisdiction of this Court any of the property of Petitioner or of the parties except in the ordinary course of business;

_N/A_ enjoin and restrain Respondent from disconnecting the home utilities, changing and/or canceling auto, health or life insurance for Respondent, Petitioner, and/or the Petitioner's minor child/ren, and/or interfering with Petitioner's or the Petitioner's minor child/ren's mail;

_N/A_ grant Petitioner the use of the following automobile: Make _____, Model _____, Year _____ and law enforcement _____ (sheriff or police department) ensure that all keys to said vehicle be immediately returned to Petitioner;

_✓_ permit Petitioner to remove the following property from the residence for the exclusive use by Petitioner and/or the minor child/ren _Clothing ,_____

_____

and law enforcement _Police_____ (sheriff or police department) be ordered to assist Petitioner during this removal;

_✓_ order Respondent to undergo evaluation for drug/alcohol abuse and to follow the recommended treatment;

Rev. 9/2015

3E

N/A 23. That Respondent shall be required to return the following property for Petitioner and/or Petitioner's children's use: _____
On _____, 20____ at _____law enforcement _____(sheriff or police department) is hereby ordered to assist the Petitioner during this return.

N/A 24. It is further Ordered:
[pco08] _____
_____

SO ORDERED this _10_ day of _AUg_ _2018_, _____.

_____

JUDGE, SUPERIOR COURT
Fulton County

_____
Print or stamp Judge's name

**Violation of the above Order may be punishable by arrest.**

Rev. 9/2015



‹ h<kholmes@ail-ga.com>                    Nov 30, 2018, 12:14 PM



**Good Afternoon New Team Member:**

**Congratulations again on your recent acceptance into our agency. You may not completely understand all the details of the opportunity that has been afforded you but I will tell you this, you are in a better position than you could possibly imagine. All that is left now is for you to apply yourself the way you stated in your interview. As a result of doing this, not only are you going to enjoy the excitement of a wonderful career, you are also going to put yourself in the position to build great wealth. All this will be done while simultaneously growing in a company which will allow you the opportunity to train people to achieve that same success.**

**I am truly excited about you coming into our organization. I look forward to you playing a vital role in the expansion of the Johnson Agencies and American Income.**

**Welcome to the AIL / Johnson Agencies Family!!!!!!!!!!!!**

**This email contains the following:**

**1. Email link for CAS Help - to assist in loading EAPP**

4 A

**2. Johnson Agency Script**

**3. Eapp Laptop Requirements**

**4. AIL Presentation**

**5. Laptop On Demand access**

**6. Training Manual**

**Please download all documents and follow the instructions to get our presentation software loaded on your laptop. YOUR LAPTOP MUST BE COMPATIBLE TO WINDOWS IN ORDER FOR THE EAPP TO WORK! Proceed to print the Script. Once you have downloaded our software and printed the script, you should begin studying the presentation scripts immediately.  We recommend you spend 80% of your time studying with EApp using the Script. It is very important that you marry the paper script and the navigation of the Laptop together. The more you study with the Laptop, the sooner this marriage will occur. We have also added a preview presentation for you to view and mimic on google drive. The log-in information is below the directions for the EApp.**

**Please contact the office or your trainer with any questions.**

**EApp**

**Contact Information**
**254-761-6684**
**cashelp@ailife.com***

**\*Email CASHELP with subject "eApp install". They will send you a 6 digit code that lasts for twenty minutes (if the email has been in your inbox longer than 20 minutes, you will need to resend an email to get a new code). Once you receive a reply, access www.logmein123.com in order to input the 6 digit code. They will remote into your computer and load the software. This must be completed before your first day of Workshop Training.**

**\*Your laptop must be compatible with Windows. Apple computers will not be able to upload the required app.**

4B

**Username: eapptraining**

**Password: training**

**Agency: Kyle Johnson**

**To access a preview of the presentation you will be expected to recite, copy and paste the link below to your web browser. PLEASE WATCH VIDEO 5 TIMES BEFORE DAY ONE OF TRAINING!!**

https://drive.google.com/file/d/1H-L3v1DySRgLYh_7H_Lzp9oCxz1mJE_o/view

In week 2, you will need to complete the Laptop On Demand quiz. To access this information, go to laptopondemand.com. **The log-in information is below.**

**Username: sales@ailife.com**

**Password: ALP2018**

**LIKE US ON FACEBOOK!**

**For weekly updates and pictures, please follow our facebook page at:**

**www.facebook.com/johnsonsagencies**

American Income Life - Johnson Agencies - Home | Facebook
www.facebook.com

American Income Life - Johnson Agencies, Marietta, Georgia. 595 likes · 27 talking about this · 86 were here. Our life and supplemental accident and...

4C

**Congratulations Again!!!**

**We look forward to seeing you soon!**

Kindly,
Kiera Holmes
Assistant to Kyle Johnson
AIL-Johnson Agency
2000 Powers Ferry Road,
Suite 600
Marietta, GA 30067
470-809-0556

4D



EApp

Contact Information
**254-761-6684**
**eapphelp@ailife.com**

Purchasing Suggestion:

Notebook\Laptop (Duo Core)

- Minimum of 2 gig of computer memory
- Minimum of 150gig of hard drive storage
- Operating System is Windows XP Professional with all current Service packs installed or Vista (UAC turned off).
- Personal Firewall Software (* XP Service Pack 2.0 includes a personal firewall)
- Virus Scanning Software
- Sound requires audio output

**Requirements**

The eApp software was designed to function on both laptop and tablet PC computers. Below are the hardware/software requirements for each configuration.

*Laptop*

Windows 7 minimum requirements:

    1 GHz processor (32- or 64-bit)

    1 GB of RAM (32-bit); 2 GB of RAM (64-bit)

    16 GB of available disk space (32-bit); 20 GB of available disk space (64-bit)

    DirectX 9 graphics device with WDDM 1.0 or higher driver

    Virus Scanning Software

AIL Johnson Agency
1945 The Exchange SE Ste 110
Atlanta GA 30339
678-916-8333

5A

Vista minimum requirements:

    1 GHz processor (32- or 64-bit)

    512 MB of RAM (for Home Basic); 1 GB of RAM for all other versions

    15 GB of available disk space

    Support for DirectX 9 graphics and 32 MB of graphics memory (for Home Basic); 128 MB of graphics memory plus WDDM support for all other versions

    Virus Scanning Software

AIL Johnson Agency
1945 The Exchange SE Ste 110
Atlanta GA 30339
678-916-8333

5B

8

# Pay Structure

# And

# Streams of Income

6A



## AMERICAN INCOME LIFE
insurance company

## <u>Annual Life Premium ('ALP') Calculation</u>

**$66/mo. Total Life Premium**
**X 12 months**
**$800 ALP**

## <u>Weekly Production</u>

**$2,400 alp (3 Average Sales)**
**X 50%-1st year Commission**
**$1,200 – Potential 1st Year Commission**
**X 65% Advance**
**$780 Advance on Monday**
**$200 Expense** *(first 90 days)*
**$288 Bonus**
**$1,268 Total/Week**

## <u>Weekly Bonus</u>
 - ➢ **1,000 – 1,499 Gross ALP = 6% of Net ALP**
 - ➢ **1,500 – 1,999 Gross ALP = 10% of Net ALP**
 - ➢ **2,000 – 2,999 Gross ALP = 12% of Net ALP**
 - ➢ **3,000 – 3,999 Gross ALP = 13% of Net ALP**
 - ➢ **4,000+ Gross ALP     = 15% of Net ALP**

Johnson Agency
2000 Powers Ferry Rd SE, Suite 600
Marietta, GA 30067
678-916-8333

6B

# 2018 World's Greatest Bonus

The Weekly Bonus is a bonus based on gross ALP in the week as shown on their weekly advance report.  The bonus calculation is based on the Net ALP for the week.

Agents are eligible for an increase of the bonus percentage which varies based on ALP level.

| Min. Gross ALP | Bonus Qual. |
|---|---|
| $1,000 - $1,499 | 6.0% of Net ALP |
| $1,500 - $1,999 | 10.0% of Net ALP |
| $2,000 - $2,999 | 12.0% of Net ALP |
| $3,000 - $3,999 | 13.0% of Net ALP |
| $4,000+ | 15.0% of Net ALP |

Agents 12+ months with a minimum of $2,000 gross ALP can receive a bonus increase based on their retention rate:

- 73 - 78.99% - Regular bonus
- 79 - 82.99% - 10% of bonus extra
- 83 - 86.99% - 20% of bonus extra
- 87+% - 30% of bonus extra

*Agents 12+ months with retention between 71% and 72.99% will be paid a reduced bonus at a 20% decrease for each point below 73 (no bonus below 71% retention)

- 70.99% or lower – no bonus
- 71 – 71.99% - 60% of bonus
- 72 – 72.99% - 80% of bonus
- 73+% - Full Bonus

**Agents 0-12 Mos.***
- Agents in their first 12 months must also meet the required net to gross ratio listed below:

  - 5th - 6th months – 84% net to gross is required
  - 7th - 12th months – 80% net to gross is required
    - Note: Net to gross comparison uses the prior month end AP&P data

**New agents will not have a net-to-gross requirement in their first four months.

**Agents 12+ Mos.***
- Requires 73% retention*

*Contract month used in evaluation of tenure category.

# 2018 Guaranteed Advance

In addition to the weekly bonus – new agents in their first 90 days would also be eligible for a guaranteed advance based on submitting at least $1,000 of gross ALP for a week.

The $1,000 of gross ALP will be based on submit as it appears on the weekly advance report.

If the agent's net to gross is too low to qualify for a PPD advance (regular advance), the extra guaranteed advance would be stopped.

If the agent submits the $1,000 of gross ALP, they would receive an additional advance (AAR advance – charged to their ledger account). A $200 extra advance would be available through the first 90 days.

Business with the following notify trailers will be excluded from guaranteed advance qualification: NOPRD, IPACL, IPSTP, IPNAT, IPINV, IPAFZ, CTLBS, & VERPH. Please note that business with IPNSF will still be allowed to qualify towards guaranteed advance.

The extra advance, if earned, will display on the agent's weekly advance report, and will be paid by paper check or ACH depending on how the agent is set-up for their regular advance.



# 2018 SA/GA Direct Associate Field Training Bonus

**This bonus is available for the first six months (180 days) of the new associate.**

*Bonus eligibility:* the SA or GA, must have a certain number of direct "associates" – defined here as a new agent directly coded to the SA or GA who submits at least $1,000 gross ALP contract to date.

*"Associate" Requirements:*
SA      Requires **1** "associate" the previous **two** months
GA      Requires **2** **Direct** "associates" the previous **two** months

The bonus will be calculated as a percentage of the total Weekly WGB Bonus earned by new agents in their first **180 days** under a SA or GA during the week.

***First time SAs and GAs have no new associate requirements for the first 30 days.***

| SA or GA | Bonus |
|---|---|
| *Direct Associate* | |
| Code Month + 1 WGB Bonus Earner | 150% of Bonus Agent's WGB |
| 3rd – 6th Month WGB Bonus Earner | 100% of Bonus Agent's WGB |

In order to be eligible for the Bonus, SA/GAs in months 0-12 will be evaluated based on their net-to-gross. The net-to-gross requirements are as follows:

- 1-3 months – 86%
- 4-6 months – 84%
- 7-12 months – 80%

Starting in their 13th month (using the prior month's AP&P report), the SA or GA must have 73% retention. If retention is below 73%, the bonus will be paid at a reduced rate of 20% for each 1 point below 73 (no bonus below 71% retention).

- 70.99% or lower – no bonus
- 71 - 71.99% - 60% of bonus
- 72 - 72.99% - 80% of bonus
- 73+% - Full Bonus

***SA/GA must net $3,000 minimum in personal Net ALP business the prior month to qualify for their bonus the following month.***

\*Example:  An agent contracted (first app date) on October 5th, 2017 will be an eligible agent for an SA or GA for this bonus until April 3rd, 2018, which is 180 days after October 5th. Since April 3rd, 2018 is on a Tuesday, the SA or GA will be eligible to earn the training bonus through the advance run date for that week (on either April 4th-5th) as long as all other qualifications are met. The next advance run date (April 11-12) the SA or GA will be eligible to earn the regular Leadership Bonus off of this agent's WGB.

6E

# 2018 SA Weekly Leadership Bonus

<u>**This bonus is available for associates in their 7th month.  (181st day and after)**</u>

*Bonus eligibility:* the SA must have a certain number of "associates" – defined here as a new agent who submits at least $1,000 gross ALP contract to date.

<u>*"Associate" Requirements:*</u>

SA is eligible to bonus if there is <u>**one or more**</u> new associates in the previous <u>**two**</u> calendar months.

***First time SAs have no new associate requirement for the first 60 days.***

|  |  |
|---|---|
| **<u>SA</u>** | **<u>Bonus</u>** |
| *Direct Associate* | |
| Post Six Month WGB Bonus Earner | 50% of Writing Agent's WGB |

In order to be eligible for the Bonus, SAs in months 0-12 will be evaluated based on their net-to-gross.  The net-to-gross requirements are as follows:

- 1-3 months – 86%
- 4-6 months – 84%
- 7-12 months – 80%

Starting in their 13th month (using the prior month's AP&P report), the SA must have 73% retention.  If retention is below 73%, the bonus will be paid at a reduced rate of 20% for each 1 point below 73 (no bonus below 71% retention).

- 70.99% or lower – no bonus
- 71 - 71.99% - 60% of bonus
- 72 - 72.99% - 80% of bonus
- 73+% - Full Bonus

***SA must net $3,000 minimum in personal Net ALP business the prior month to qualify for their leadership bonus the following month.***

6F

# 2018 GA Weekly Leadership Bonus

<u>**Direct Bonus available on associates in their 7th month. (181st day)  For Indirect Bonus, percentage available for first six month and post six month associates.**</u>

*Bonus eligibility:* the GA must have a certain number of direct/indirect "associates" – defined here as a new agent directly or indirectly coded to the GA who submits at least $1,000 gross ALP contract to date.

*Associate Requirements:*
GA is eligible to bonus if there are **two or more** new associates in the previous **two** calendar months.

*First Time General Agents will have a 30 day grace period for monthly associate requirements.*

<u>GA</u>                                                                    Bonus
*Direct Associate*
Post Six Month WGB Bonus Earner                         50% of Writing Agent's WGB

<u>GA</u>                                                                    Bonus
*Indirect Associate*
First Six Month WGB Bonus Earner                         25% of Writing Agent's WGB
Post Six Month WGB Bonus Earner                        25% of Writing Agent's WGB

*Any SA Leadership or Training Bonus reduced or eliminated for retention/NTG will carry forward to the GA Indirect Leadership Bonus.*

In order to be eligible for the Bonus, GAs in months 0-12 will be evaluated based on their net-to-gross. The net-to-gross requirements are as follows:

- 1-3 months – 86%
- 4-6 months – 84%
- 7-12 months – 80%

Starting in their 13th month (using the prior month's AP&P report), the GA must have 73% retention. If retention is below 73%, the bonus will be paid at a reduced rate of 20% for each 1 point below 73 (no bonus below 71% retention).

- 70.99% or lower – no bonus
- 71 - 71.99% - 60% of bonus
- 72 - 72.99% - 80% of bonus
- 73+% - Full Bonus

*GA must net $3,000 minimum in personal Net ALP business the prior month to qualify for their leadership bonus the following month.*

Effective January 1, 2018

66

# 2018 MGA Weekly Leadership Bonus

*Bonus eligibility:* the MGA must have a certain number of "associates" – defined here as a new agent who submits at least $1,000 gross ALP contract to date.  New associates count up-line – ex: if an SA who is coded under an MGA has an associate, both the SA and MGA get credit for the associate.

*Associate Requirements:*
MGA is eligible to bonus if there are **four or more** new associates in the previous **two** calendar months.

*First time MGAs have no associate requirement for the first 90 days.*

| MGA | Bonus |
|---|---|
| *Direct Associate* | |
| WGB Bonus Earner | 60% of Writing Agent's Bonus |

| MGA | Bonus |
|---|---|
| *Indirect Associate* | |
| Code Month + 1 WGB Bonus Earner | 70% of Writing Agent's Bonus |
| 3rd Month & After WGB Bonus Earner | 100% of Writing Agent's Bonus |

*Any SA or GA Leadership or Training Bonus reduced or eliminated for retention/NTG will carry forward to the MGA Indirect Leadership Bonus.*

In order to be eligible for the Bonus, MGAs in months 0-12 will be evaluated based on their net-to-gross.  The net-to-gross requirements are as follows:

- 1-3 months – 86%
- 4-6 months – 84%
- 7-12 months – 80%

Starting in their 13th month (using the prior month's AP&P report), the MGA must have 73% retention.  If retention is below 73%, the bonus will be paid at a reduced rate of 20% for each 1 point below 73 (no bonus below 71% retention).

- 70.99% or lower – no bonus
- 71 - 71.99% - 60% of bonus
- 72 - 72.99% - 80% of bonus
- 73+% - Full Bonus

*An MGA must promote one person to MGA per year or within one year of becoming an MGA to maintain eligibility for the Leadership Bonus.*

Effective January 1, 2018

6 H

# 2018 Regional General Agent Bonus

The bonus percent will be paid on the number of bonus earning MGAs the RGA has for a particular week. Based on the number of MGAs who bonus, the RGA would receive the following percent of the MGA's bonus:

> 1 MGA – 30%
> 2 MGAs – 35%
> 3 MGAs – 40%
> 4 MGAs – 45%
> 5+ MGAs – 50%

In order to be eligible for the Bonus, RGAs in months 0-12 will be evaluated based on their net-to-gross. The net-to-gross requirements are as follows:

> - 1-3 months – 86%
> - 4-6 months – 84%
> - 7-12 months – 80%

In order to be eligible for the bonus, starting in their 13th month (using the prior month's AP&P report), the RGA must have 73% retention.*

> *If retention is below 73%, the bonus will be paid at a reduced rate of 20% for each point below 73 (no bonus below 71% retention).

> - 70.99% or lower – no bonus
> - 71 - 71.99% - 60% of bonus
> - 72 - 72.99% - 80% of bonus
> - 73+% - Full Bonus

The RGA is eligible for the bonus for as long as they continue to manage the MGA.  The cost of the bonus is 50% Company / 50% SGA.

### Example: *RGA over three MGAs*

**MGA 1 Weekly Bonus = $2,100**
**MGA 2 Weekly Bonus = $1,500**
**MGA 3 Weekly Bonus = $800**

**RGA Bonus = $4,400 x 40% = $1,760**

*An RGA must promote one person to MGA per year under their regular MGA hierarchy or within one year of becoming an MGA to maintain eligibility for the RGA Bonus.*

6 I

# Pre-paid Commission Advance Reduction Rates

Pre-paid commission advances will automatically be reduced based on 4-month retention rates. The advance will not be reduced on new agents due to net to gross for their code month plus the first three calendar months. We will use the net to gross ratio for the 5th through 8th months. Beginning with the 9th month, we will use the following 4-month retention rates for reduction. Evaluation will be based on the highest level retention for anyone with a management contract.

The schedule of reductions is listed below:

## 4-Month Retention Rates

*70.00% and above* - full advance (65% advance)

*67.00% - 69.99%* - 10% reduction in the pre-paid commission advance rate (55% advance).

*64.00% - 66.99%* - 15% reduction in the pre-paid commission advance rate (50% advance).

*60.00% - 63.99%* - 20% reduction in the pre-paid commission advance rate (45% advance).

*Below 59.99%* – no pre-paid commission advance will be issued

## Net to Gross

| # of Months Contracted | 5% Reduction | 10% Reduction | 15% Reduction | No Advance |
|---|---|---|---|---|
| 5th thru 6th | 75 - 79 | 70 - 74 | 65 - 69 | 64 or Below |
| 7th thru 8th | 71 - 75 | 66 – 70 | 61 - 65 | 60 or Below |



## Management Contracts: Objectives to Obtain a Promotion Interview.

SA: 52.5% - 55%; GA: 57.5% - 60%; MGA: 65%; RGA: 70%

**From 50% AG to SA:**
1. Write $18,000 net ALP in a rolling 90 days and
2. Have recruited at least one personal. This will qualify candidate for a Promotion Interview conducted by SGA, RGA/MGA and Director.

**From SA to GA:**
1. Write minimum $26,000 Net F6 Alp in a rolling 60 days with an average of 3 submitting agents (example: SA and two agents).
2. Have recruited at least 2 personal during SA tenure
3. Must be ready to promote up an AG to an SA. This will qualify candidate for a Promotion Interview conducted by SGA, RGA/MGA and Director.

**From GA to MGA:**
1. Must write a minimum of $52,000 Net F6 ALP with an average of 6 F6 submitting agents.
2. Must have at least one SA in hierarchy
3. Must be ready to promote up a GA
4. GA must be ready to promote up an SA. This will qualify candidate for a Promotion Interview conducted by SGA, RGA/MGA and Director.

**From MGA to 70% RGA:**
1. Promote at least one MGA every 12 month and receive an RGA 70% over newly promoted MGA and keep a 65% on his/her original hierarchy.

*** All terms above are subject to change.

6K

# 2019

# AIL

# Convention Qualifications

## Career Agents

**50%, 52.5%, 57.5%, 62.5%, 65% & 67.5%----**Write $93,000 of Net ALP as of December 31, 2018 AP&P report.

*For Career Agents (50%, 52.5%, 57.5%, 62.5%, 65% & 67.5% levels) contracted less than one year, the Net ALP will be prorated based on number of months contracted after the 6th month.*

**Contracted less than 7 months** *(Hired after May 31, 2018)* - **$46,500 Net ALP**

**Contracted 7 months** *(May 2018 hire date)* – **$54,250 Net ALP**

**Contracted 8 months** *(April 2018 hire date)* - **$62,000 Net ALP**

**Contracted 9 months** *(March 2018 hire date)* - **$69,750 Net ALP**

**Contracted 10 months** *(February 2018 hire date)* - **$77,500 Net ALP**

**Contracted 11 months** *(January 2018 hire date)* - **$85,250 Net ALP**

**Contracted more than 11 months** *(Hired before January 2018)* - **$93,000 Net ALP**

❖ See net to gross and retention requirements outlined below.

*\*\*\*Personal Producers can also qualify by writing $110,000 of Net Annualized Premium as of December 31, 2018 AP&P Report. This includes Career Agents, SAs and GAs. -- See net to gross and retention requirements outlined below.\*\*\**

6 L

# Supervising Agents

Write $93,000 of Personal Net ALP as of December 31, 2018 AP&P report.
*OR*
Write $155,000 of First Six Months Agent Production Net ALP
*AND*
Have at least 1 *active* First Six Months Agent as of December 31, 2018.

❖ See net to gross and retention requirements outlined below.

❋ **Can qualify on Pro-Rated basis if contracted less than 1 year.**

# General Agents

Write $93,000 of Personal Net ALP as of December 31, 2018 AP&P Report.
*OR*
Write $205,000 of First Six Months Agent Production Net ALP
*AND*
Have at least 2 *active* First Six Months Agents as of December 31, 2018.

❖ See net to gross and retention requirements outlined below.

❋ **Can qualify on Pro-Rated basis if contracted less than 1 year.**

# Master General Agents – Agency Production

Write $350,000 of First Six Months Agent Production Net ALP
as of December 31, 2018 AP&P Report
*We will allow any combination of Personal and First Six Months Agent Production Net ALP that add up to the total production requirement.*
*AND*
Have at least 4 *active* First Six Months Agents as of December 31, 2018.
*OR*
Write $93,000 of Personal Net ALP as of December 31, 2018 AP&P report.
*AND*
Have at least 1 *active* SA/GA as of December 31, 2018.

❖ See net to gross and retention requirements outlined below.

❋ **Can qualify on Pro-Rated basis if contracted less than 1 year.**

# Dover Davis Jr.

**GA Cell: 470.305.9124 email: Tekkwriter15@yahoo.com**

## SUMMARY

**I AM A DETAILED-ORIENTED TEAM PLAYER WHO CAN WORK INDEPENDENTLY, SEEKING A POSITON AS A TECHNICAL WRITER.**

## EDUCATION

**1991**
**Bachelors of Arts**: Journalism
**Georgia State University** — Atlanta, GA, United States

**2000**
**Bachelors of Science**: Telecommunications
**DeVry University** — Downers Grove, IL, United States
- I studied Telecommunications.

SKILLS:
- Copy editing
- Technical Writing(Please go to site below)
- Punctuation
- Detailed writing

## CERTIFICATIONS:TRAINING:2015

**A PLUS: 2007**          **HUDSON COUNTY COMMUNITY COLLEGE**
**NET PLUS: 2007**        **TECHICAL WRITING COURSES**

**EXPERIENCE:**
**06/1991 to 12/1991**
**Atlanta Magazine: Proofreader**
**I checked magazine articles for errors in grammar, facts and punctuation.**

**01/1999 to 2001**
**Teksystems: I worked on various contracts with companies like Sprint, IBM and AT&T.**

**04/2000 to 12/2000**
**Remote Circuit Tester: Sprint – Atlanta, Georgia**
**I tested remote routers for connectivity.**

## ACTIVITIES AND HONORS
- Dean's List: Georgia State University: 1991
- Dean's List: DeVry University: 2000

7A

Google:https://sites.google.com/site/doversite1

**PERSONAL INFORMATION**

I was injured in car accidents in 2005. I did not work from 2005 to 2016. So, that is why my resume lacks hands-on experience. But, it is filled with theoretical knowledge.

7B

Fulton County Superior Court
***EFILED***JC
Date: 11/20/2018 7:53 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
### STATE OF GEORGIA

STATE OF GEORGIA                              *
                                             *
vs.                                          *
Dover Davis                                  *     INDICTMENT NUMBER:
                                             *     18SC161506
                                             *     Judge Gail S. Tusan
                                             *

### WAIVER OF ARRAIGNMENT AND
### ENTRY OF APPEARANCE

Comes now Defendant __Dover Davis__, by and through his/her attorney below signed, and enters his/her plea of not guilty to the charges against him/her in the indictment/accusation and waives formal arraignment. The time within which Defendant shall have to file motions is governed by the Scheduling Order, which will be entered by the Court.

Counsel has instructed the Defendant on his duty to keep the Clerk informed of any change of address and has: (please mark appropriate statement)

____ confirmed Defendant's address as shown on Defendant's hearing notice is correct; or

____ if Defendant is in custody, confirmed the Defendant's address on file with the clerk is correct; or

____ Corrected Defendant's incorrect address with the case manager.

Defendant is represented by:

Name _Tameika Jackson – Office of the Public Defender_

Address_100 Peachtree St., NW  Ste. 1600_

City, State and Zip._Atlanta , GA 30303_

Phone Number_404.612.0713_    Georgia Bar #_924903_

**DOES DEFENDANT REQUIRE AN INTERPRETER?** __No__

**IF YES WHAT LANGUAGE?**

So waived this the _15th_ day of _November_, 2018.

_____
Attorney for Defendant

9A

**Visionz Process Serving & Investigative Solutions LLC**

# INVOICE

7421 Douglas Blvd
Suite N437
Douglasville, GA 30135
Phone: (404)662-6524
visionzpsis@outlook.com

INVOICE # 2021-0706
DATE: JULY 6, 2021

**TO:**
Dover Davis Jr.
P.O. Box 150485
Atlanta, GA 30315

**FOR: SERVICE OF PROCESS**
**NOTICE OF CLAIM FOR DAMAGES**

| DESCRIPTION | COUNTY | RATE | AMOUNT |
|---|---|---|---|
| **Office of the Municipal Clerk**<br>**City of Atlanta**<br>    ○   55 Trinity Avenue S.W.<br>        Suite 2700<br>        Atlanta, GA 30303 | FULTON | $85 | $85.00 |
| | | TOTAL | $85.00 |
| | | | **PAID** |

Make all checks payable to Visionz Process Serving & Investigative Solutions LLC Total due in 15 days of Invoice Date. Overdue accounts subject to a service charge of $25 per month.
**Thank you for your business!**



10 A

**Dover Davis Jr V. Office of Municipal Clerk**                                              **CASE NO.:**

**City of Atlanta**

*PLAINTIFF*          *DEFENDANT*                                                                      **N/A**

Visionz Process Serving & Investigative Solutions, LLC
7421 Douglas Blvd
Suite N437
Douglasville, GA 30135
404-662-6524

## AFFIDAVIT OF SERVICE

On Wednesday, July 7, 2021 at approximately 12:14 PM, I, Kristopher Barnes, Certified Process Server and Private Detective, swear and affirm that I personally provided Service of Process upon the City of Atlanta Office of Municipal Clerk at 55 Trinity Ave SW Atlanta, GA 30303. The location is described as Atlanta City Hall. Upon arrival, I was directed by Officers at the security checkpoint to the window of legal assistant, Denise Maddox located in the first office on the right once through the metal detectors, Office of Watershed. As I approached the window, I introduced myself as a Process Server and advised that I had a document to be served to the Office of Municipal Clerk. Maddox upon review of documents, advised that I needed to deliver the documents to the office of City Council located in Suite 2900; giving me directions to and from the elevator. Upon entry of Suite 2900, I once again introduced myself as a Process Server and provided my ID to administrative assistant, Jordan who advised the offices had recently reopened and was unsure of who was authorized to accept service. After a brief phone call, IT Manager, Damon L. Massenburg walked into the office and advised Jordan that she could sign and accept service. Jordan hesitant to accept politely asked if he didn't mind would he accept service, to which he agreed. As Massenburg accepted service, he gave me a business card containing his name and contact information. At that point, I advised Massenburg that he had been served and exited the suite as he looked for a time stamp for documents received. Before exiting the building, I walked back to the window where Maddox was sitting and thanked her for her assistance. At the time of service, Damon L. Massenburg is described as a black male with a low haircut, goatee, and glasses wearing beige pants, a red button down shirt, and brown shoes.

**Documents to be Served:**
**Notice of Claim for Damages**
Case No.: N/A                                           Court Filed: N/A

This service was on behalf of client/ plaintiff, Dover Davis Jr.

Affiant, Kristopher Barnes states that he is over 18 years of age, a Citizen of the United States, and not related to the parties herein. The statements made in the affidavit are true and correct and are based upon my personal knowledge.

Kristopher Barnes, PI                                  Sworn and Subscribed before me
Visionz Process Serving & Investigative Solutions, LLC   this 7 day of July 2021
GA License Number: PDSC001749

                                                       NOTARY PUBLIC
                                                       My Commission Expires: 3/8/24

10 B