## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DOVER DAVIS JR**.
       **Plaintiff**

v.

**OFFICER AARON SWANN**,
In his Individual capacity,
      **Defendant**

Civil  Action No.
**1:21-cv-03311-SDG**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 2 8 2022

KEVIN P. WEIMER, Clerk
By:_____ Deputy Clerk

---

### AMENDED COMPLAINT

Comes now Plaintiff Dover Davis Jr., for his complaint against Defendant Officer Aaron Swann states as follows:

### INTRODUCTION

### 1.

This is an action for actual compensatory damages for lost wages, lost income and future lost income, treble damages or money damages and punitive damages for the egregious acts committed by Defendant Swann brought Pursuant to 42 U.S.C. & 1983 and 1988, for violations of rights, privileges and immunities regarding the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution  and under the laws of the State of Georgia.

1

## JURISDICTION AND VENUE

1.

This Court has original jurisdiction pursuant to 28 U.S. C 1331, 28 U.S.C. § 1390 and 1343 over plaintiff's cause of action, arising under the Constitution of the United States and 42 U.S.C. 1983. This Court has supplemental jurisdiction over the plaintiff's cause of action, arising under the Georgia law pursuant to 28 U.S.C 1367. Venue lies in the United States District Court for the Northern District of Georgia Atlanta Division because a substantial part of the events or omissions giving rise to plaintiff's claims occurred in Fulton County, Georgia. 28 U.S.C 1391(b) (2)

**2.**

## BACKGROUND

On August 4, 2018 about 3 p.m., Robert Davis (R. Davis), the landlord of 325 Holderness Street, plaintiff's former residence, called the Atlanta Police for assistance. Defendant Aaron Swann responded. R. Davis knew Defendant Swann personally and asked him to illegally evict the plaintiff from the residence without a court order, calling the plaintiff a threat to his organization

2

because he sued two entities in New Jersey and stating that he was not going to allow the plaintiff to damage him". (Police video camera, "August 4, 2018").

3.

In addition, R. Davis told Defendant Swann the "police had evicted another tenant last month, so he could evict the plaintiff". Defendant Swann's video camera captured the entire event. (Atl. Police video tape, Aug. 4, 2018)

At that moment Defendant Swann called his supervisor. When his supervisor arrived, he informed R. Davis that the "police were not evicting tenants any longer" so, R. Davis would have to take the legal route."

4.

However, R. Davis knew of the legal route because he was a plaintiff in Fulton and DeKalb County Magistrate courts after filing eviction papers against hundreds of people in Fulton County and six families in Dekalb County to have them evicted from his managed homes. WSB Chanel 2 news did a story revealing a scam. In the report, the victims stated that R. Davis said, "Do you want me to pay your rent or my car note". And the court judge gave the eviction in his name. So, video evidence clearly evinces that R. Davis used Defendant Swann to illegally evict the plaintiff to avoid legal action. (See exhibit "2A") and (Atl. Police video tape, Aug.

3

4, 2018)

5.

Eventually, the supervisor left the location, leaving Defendant Swann

unsupervised who then became loud, threatening and intimidating and told the

plaintiff that the landlord wanted him to leave. (Atl. Police video tape, Aug. 4,

2018)

At that point, Defendant Swann acted as a police officer in his official capacity

and as a private citizen or a friend of  R. Davis and Frederick Bushau Boyd. After

being subjected to threatening and intimidating behavior, the plaintiff agreed to

move only because he felt uncomfortable, threatened and coerced. The plaintiff

said "ok, I will move" to Defendant Swann. (Atl. Police video tape, Aug. 4, 2018)

6.

On August 4, 2019, Defendant Swann told the plaintiff that Frederick Bushau

Boyd and Robert Davis didn't "want to have anything to do with him" after

responding to a police assistance request by R. Davis. Defendant Swann's

statements were personal, not professional, and revealed a "malicious bias".

So, the plaintiff filed a verbal complaint against at Defendant Swann at Precinct

1 later that day, accusing him of showing preferential treatment for Frederick

4

Bushau Boyd and R. Davis.

7.

When the plaintiff returned to 325 Holderness Street, he saw R. Davis, Boyd

and Debra Wade sitting on the porch in discussion. Later, he went to work. Hours

later during the early morning of August 5, 2018, when the plaintiff

returned to the residence and entered his room, he realized that someone had

illegally entered his room when discovering a butter knife on his bedroom floor. So

he checked his bedroom door and saw a mark, indicating forced entry. He did not

see or hear anyone and was tired so went to bed, deciding to contact R. Davis later

that day.

8.

According to the police report, at some time, Defendant Swann and a second

Officer were responding to a call at 329 Holderness Street, next door, where three

residents had an altercation involving a handgun. At that moment, Boyd spoke to

Defendant Swann and then accused the plaintiff of "pointing a handgun" at him,

which was the same accusation made by residents at 329 Holderness Street.

9.

Then, without supervision or contacting his supervisor, Defendant Swann

entered 325 Holderness Street and banged on the plaintiff's bedroom door, while

shouting, "Police", awaking and startling the plaintiff. He, then slowly walked to

his bedroom door half-a-sleep and drowsy from taking sleeping pills.

10.

The plaintiff states that when he opened his bedroom door, he saw Defendant

Swann standing with his hand on his gun shouting, "Do you have a gun, own a

gun, etc. between 15 to 30 seconds or so. The plaintiff answered "no" because he

was not completely awake, shocked and overwhelmed, and did not understand

Defendant Swann, but did not have a gun on his person and did not think about his

gun in his car. Defendant Swann interrogated the plaintiff while he was not fully

awake.  His mind was not in a state of full comprehension and he just did not

completely understand Defendant Swann at that moment. He responded out of fear

and shock.

11.

The conversation continued in the hallway. When the plaintiff stated that he did

not have a gun, his accuser Boyd said "the landlord went into his room

and took a picture of his hand gun clip and that is how I know he's got a gun",

while handing Defendant Swann his cell phone that captured the photograph, a

very important fact, which was excluded from the police report.

12.

Boyd's revelation is evidence that R. Davis, also, committed "Burglary" which is Georgia Code 16-7-1(b), which states "A person commits the offence of burglary in the first degree when, without authority and with the intent to commit a felony or theft therein....or other structure designed for use as the dwelling of another."

R. Davis entered the plaintiff room without his permission in the early morning of August 5, 2018, searched it and took a picture of his handgun clip, which was reported in Defendant Swann's police report. In addition, plaintiff's handgun box with pictures of his gun was on his dresser, in plain view. (See police report, exhibit "7A")

13.

Boyd's admission is evidence that Boyd knew the plaintiff owned a handgun before he made his false accusation to Defendant Swann, which raised a "reasonable doubt" that a crime had been committed by the plaintiff.

Boyd and R. Davis violated O.C.G.A. 16-4-8 (2010) Conspiracy to commit a crime, which states: A person commits the offense of conspiracy to commit a

crime when he together with one or more persons conspires to commit any crime

and any one or more of such persons do any overt act to effect the object of the

conspiracy.

14.

The landlord's action was burglary and an invasion of plaintiff's privacy.

O.C.G.A 16-11-62 (2) ... Any person, through the use of any device, without

the consent of all persons observed, to observe, photograph or record...(7) any

person to commit any other acts of a nature similar to those set out in paragraphs

(1) through (6) of this Code section which invade the privacy of another.

Defendant Swann ignored that criminal act. Boyd informed Defendant Swann

of a crime which was a well-known and established law or decree, but Defendant

Swann did not respond to the violation of that law and didn't investigate it, call his

supervisor or contact the landlord. He simply ignored that criminal act. Boyd's

statement is evidence that R. Davis violated the plaintiff's Fourth Amendment

Right, illegal search and seizure, and a well-know Georgia law.

(See police report, August 5, 2018).

15.

The plaintiff states the discussion continued into the hallway while he waking

up, but still drowsy. Defendant Swann became furious, yelling and screaming in a

crazy-terrifying manner and saying, "They are going to continue to do this to you".

The plaintiff was horrified and became afraid. So, he said that he would move

again, just as he had stated on August 4th, the day before. So, through

force and intimidation, Defendant Swann forced the plaintiff to vacate the

residence. His behavior was discriminatory and violated the plaintiff's Fourth

Amendment Right" which states, "The right of the people to be secure in their

persons, houses, papers and effects, against unreasonable searches and seizures,

shall not be violated, and no Warrants shall issue, but upon probable cause,

supported by Oath or affirmation, and particularly describing the place to be

searched, and the persons or things to be seized."

16.

The plaintiff states that he did not feel secure in his person, house or papers and

thought Defendant Swann was about to shoot him and that he was about to die.

Defendant Swann by his choice of questions wanted the plaintiff to say "Yes, he

had a gun to have justification to shoot him and Boyd would have been his witness.

So, he grabbed items and walked to the door. When he reached his car, he

realized that his gun was inside his car. So, he decided to inform the Defendant

Swann after closing his car door.

17.

At that point, Defendant Swann had not informed the plaintiff of Boyd's

accusation. After closing his car door, he looked for Defendant Swann,

but, he had returned to 329 Holderness Street, next door.

Defendant Swann was investigating two different violations at the same time.

So, Defendant Swann could not have accurately documented and properly

interpreted the facts in both cases. So, it is clear that he made up and excluded

facts.

18.

So, the Plaintiff waited next to his car. While Defendant Swann was next door,

the plaintiff had an argument with Boyd who stopped him from entering the

residence where he legally resided. Boyd threatened the plaintiff and blocked the

entrance. When Defendant Swann returned, he saw Boyd blocking the plaintiff's

access to the residence, but he did nothing. Defendant Swann did not cite or arrest

Boyd for his illegal behavior. There was not a court order of eviction.

19.

Then, Defendant Swann left for a second time, quickly. Defendant Swann's

behavior was incompetent. So, the plaintiff went to his vehicle and waited with his

trunk open to show Defendant Swann his gun when he returned. The plaintiff was

standing behind his vehicle looking into his green bag when he noticed another

tenant was watching him. The plaintiff discovered later the house at 325

Holderness Street, plaintiff's residence, was a rehabilitation house for people with

addictions. The plaintiff discovered the house on Craig's list after he relocated

from New Jersey.

20.

Then, that tenant went to Boyd who was standing on the porch and spoke to

him. When Officer Swann returned, Boyd after speaking to the tenant yelled, "It's

in the car". The plaintiff backed away from his vehicle, thinking Defendant Swann

might take a shot at him, but waited for Defendant Swann to come to him or

call him.

21.

But, Defendant Swann walked away for a third time, leaving the plaintiff and

his handgun in his trunk. Defendant Swann simply walked away to give the false

impression that the plaintiff did not try to tell him about his weapon and called

11

CID, which took another 20 to 30 minutes. Defendant Swann did not verify the

plaintiff's weapon was in his trunk and secure it. When CID arrived, the plaintiff

was standing behind his vehicle with his trunk open. Again, Defendant Swann's

behavior was incompetent.

22.

The plaintiff states when the investigators questioned him about his handgun,

he told them that it was in his car in a green bag and then pointed to the bag. After

the plaintiff pointed to his gun, Defendant Swann who was standing behind him

informed him of his right to own a weapon but, then arrested and charged him

with two felonies that had no basis in the facts.

At no time before the arrest did Defendant Swann inform the plaintiff of Boyd's

accusation and give him a chance to explain. Defendant Swann did not have

probable cause to arrest which states, "Probable cause means the facts are apparent

and obvious to a reasonable person and that a reasonable person would believe that

a crime was in the process of being committed, had been committed, or was going

to be committed."

23.

After the plaintiff's arrest, Defendant Swann and Boyd, the plaintiff's accuser,

12

looked at him and laughed while he was sitting handcuffed in the police car. When

Defendant Swann returned to his police car, the plaintiff told him that he did not

understand what he had asked him because he was not fully awake. Defendant

Swann said, "I know, "that is why I did not charge you with falsification". In

Malley v. Briggs, 475 U.S. 335. 341 (1986), the Court held "qualified immunity

protects "all but the plainly incompetent or those who knowingly violate the law".

24.

Defendant Swann falsified the facts. When Boyd said, "The landlord went into

his room and took a picture of his handgun clip and that is how I know he has a

gun." Defendant Swann excluded the, "and that is how I know he has a gun". This

fact removes probable cause. A second fact shows clear fabrication was Defendant

Swann's description of the plaintiff's clothing. The plaintiff was wearing cut-off

shorts that did not have a lining. He stated that the plaintiff was wearing "pants".

That statement was false. The plaintiff wore shorts that could not have hidden a

25.

gun and he did not re-enter the house. When he exited the house, Defendant Swann

and Boyd were standing near the porch watching him.   Boyd shouted from the

porch, "it is in the car", 30 to 40 minutes after the plaintiff exited the house. In the

police report Defendant Swann wrote that Boyd told him the plaintiff took his

handgun out of his pants and put it in the car. A third fact contradiction is evident

between Boyd's false statement that the plaintiff threatened, "to kill him" and his

witness Debra Wade's stated that "she overheard the argument, but she didn't

hear any threats". She stated that she "overheard" but didn't see. Boyd could have

been arguing with another person. All of the facts create doubt that Defendant

Swann ignored.

26.

The plaintiff states that Defendant Swann overcharged him to force him to plea

to a lesser charge to secure a plea. Overcharging is a police and prosecutorial tactic

to scare defendants into giving up and plea to lesser charges. Defendant Swann

knew the felony charges were invalid. This tactic forces innocent people to plead

guilty to lesser crimes. It is unethical and malicious.

After the arrest Defendant Swann proceeded to secure a warrant based on facts

due to Boyd's lies, ignoring the circumstances of the event and his malice against

the plaintiff.

27.

The plaintiff states the moment Defendant Swann charged him with two

felonies without evidence  based on the word of a convicted felon, his deprivation

began.  The charges were dismissed due to "no evidence. In Thompson v

Louisville, 362 U.S 199 (1960), the court held …"Thus we find no evidence

whatever in the record to support these convictions. Just as "Conviction upon a

charge not made would be sheer denial of due process," so is it a violation of due

process to convict and punish a man without evidence of his guilt". The plaintiff

was punished when arrested without evidence and prosecuted for three years.

28.

The plaintiff states that Defendant Swann charged him with two felonies:

Aggravated Assault with a deadly weapon ..O.C.G.A 16-5-21 and Possession of a

Firearm During Commission of a Felony ..O.C.G.A 16-11-106. Defendant

Swann charged the plaintiff with "pointing a gun" which is a misdemeanor

O.C.G.A 16-11-102, which states, "A person is guilty of a misdemeanor when he

intentionally and without legal justification points or aims a gun or pistol at

another, whether the gun or pistol is loaded or unloaded. But, the

plaintiff did not have an argument with Boyd or point a gun.

29.

But, Defendant Swann cited O.C.G.A 16-5-21, which states, "(a) A person

commits  the offense of aggravated assault when he or she assaults: (1) With intent

to murder, to rape or to rob; (2) With a deadly weapon or with any object, device,

or instrument, when used offensively against a person, is likely to or actually does

result in serious bodily injury; (3)....strangulation.

In the case of ***Savage v. State***, the defendant pointed a firearm at the victim.

However, the Court charged the defendant with aggravated assault instead of

pointing a gun at another because the victim was placed in reasonable

apprehension of immediate violent injury. Therefore, the accused went from being

charged with the misdemeanor pointing a gun to a felony of aggravated assault.

274 Ga. 692, (2002).

30.

However, In Savage v. State, the court charged the defendant, but in the

plaintiff's case Defendant Swann escalated the charge to a felony without any facts

justifying a charge escalation from "pointing a gun" to "rape and murder" in the

police report but, based solely on the statements of a convicted felon who robbed

Georgia Tech students in March 2019 and was charged **Robbery by force, battery**

**and Aggravated Assault** and who at the time of the plaintiff's arrest had an

extensive criminal record in Florida and Massachusetts.

Defendant Swann's decision to escalate the charges was not reasonable because

as mentioned above the witness' statement and the other contradictions in fact
clearly evince that no crime was committed and no threat spoken; his decision was
malicious and revengeful. He exploited the law to damage the plaintiff.

31.

Additional proof of Defendant Swann' invalid charges centers on Elements of
felony crime. For example, Defendant Swann charged the plaintiff with Possession
of a Firearm During Commission of a Felony ..O.C.G.A 16-11-106.

The plaintiff states that all crimes have certain "Elements" that must be met in
order for the prosecution to be able to prove guilt. As the Court knows, elements
are different for every crime, but all handgun related crimes will have similar
elements.

The plaintiff states that, in order for the prosecution to be able to prove anyone
guilty of Possession of a Firearm in the Commission of a Felony, they have to
prove that the accused: knowingly and willfully possessed a firearm while
committing another felony, and they must prove the elements of that other felony,
and then they must prove that the possession of the firearm was connected to the
other felony.

32.

Defendant Swann charged the plaintiff with a "misdemeanor" that he escalated
to O.C.G.A 16-5-21, a felony, with elements that were not connected to the

elements of "misdemeanor", then he charged the plaintiff with O.C.G.A 16-11-106 that had elements not connected to O.C.G.A 16-5-2, a felony.

The plaintiff states that this is when his monetary deprivation commenced and this deprivation or monetary loss was caused by Defendant Swann's decision to escalate the baseless misdemeanor charge to a felony. He charged the plaintiff

33.

with a misdemeanor then he escalated the charge to a felony of "rape and murder" without basing the escalation on facts relevant to the elements of that felony crime, then he added another felony without showing facts relevant to the elements of that felony crime. The plaintiff's loss of employment was due to the Georgia Insurance Commission denying his insurance license due to felony charges; the SBA denied the plaintiff's application for PPP loan due to felony charges; the plaintiff was denied housing because he could not pass a background check due to felony charges; and the plaintiff's inability to secure a professional job was impossible because he could not pass a background check due to felony charges.

34.

The plaintiff states that if Defendant Swann had not escalated the misdemeanor

charge to a felony, he would not have suffered monetary deprivations and loss.

Indeed, Defendant Swann's decision to escalate the misdemeanor to a felony based solely on the word of a convicted felon was illegal, egregious, incompetent and malicious which caused the plaintiff deprivations or monetary loss for four years. In Malley v. Briggs, 475 U.S. 335. 341 (1986), the Court held "qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law". The plaintiff felony charges were dismissed on May 20, 2021. It took one year for the felony charges to be removed and case sealed.( See document "1A")

35.

The plaintiff states that he has two degrees: Bachelor of Arts in Journalism and a Bachelor of Science in Telecommunications Management; He is also certified it two IT fields. He states his monetary and compensatory damages are the following: he was incarcerated for 17 days. Before his arrest he was earning $100 to $200 per day as a driver and was pursuing several jobs in Information Technology (IT) and the Insurance Industry. The positions in IT carried salaries ranging from $75,000 to $100, 000 + per year.

The plaintiff states his felony record became his "axe of deprivation"

because all of his money damages were the result of his felony record.

36.

The plaintiff states the false charges made by Defendant Swann carried the

"label" of felony which until dismissed disqualified him from employment and

housing because the plaintiff could not pass a background check. The plaintiff's

application for apartments was denied. Since, the plaintiff could not pass a

background check to acquire apartment housing, he was forced to sleep in his car

and or homeless shelters, which increased his pain and suffering.

37.

The plaintiff was employed by American Income Life. The income included

salaries ranging from: $1,200 to $2,400 per week times 52 weeks in salary totaling

$62,400 to $124,800 times 4 years totaling $249,600 to $499,200 plus bonuses of

$1000 to $4000 per week times 52 equaling $52,000 to $208,000 per year times 4

totaling $208,000 to $832,000 in lost income and $200 in expenses per week for 3

months totaling $2,400 in lost income. (See document "6A")

38.

Each sale carried residual income; for example, a life term insurance policy

produced income for the agent for life or as long as the policy was active. Thus, the residual income depending on policies sold could have exceeded $50, 000 to $100,000 per year. The plaintiff would have retired at age 70 after working 12 years as an insurance agent and started his own insurance agency; his potential and future income would have exceeded millions.

The potential of selling 1000 policies would have produced income for the plaintiff for life. He states that these facts evince his income losses are directly connected to Defendant Swann's false felony charges

39.

The plaintiff states that the Georgia Insurance Department denied his insurance license in 2018 but his felony charges were dismissed in 2021 but remained on record until 2022. He lost four years of income due to Defendant Swann's false felony charges.

In addition, the plaintiff states that Defendant Swann arrested three people who were involved in a handgun pointing altercation at 329 Holderness Street. One of the defendants was charged with two felonies, including pointing a handgun. That defendant shared information about his case with the plaintiff while in jail.

40.

He stated that Officer Swann wrote "accused of pointing a gun" on his ticket. In contrast, Officer Swann charged the plaintiff with two felonies, but wrote "pointed a handgun in the description. Two different descriptions of the same charges was a violation of the plaintiff's Fourteenth Amendment Right, equal protection under the law. Officer Swann's description of the charges for the defendant arrested at 329 Holderness Street implied the charges were unsubstantiated, but Officer Swann's description of the charges for the plaintiff implied the charges were substantiated. At this point the status of that defendant's case is unknown.

**Preliminary Hearing: August 6, 2018**

**41.**

The next day, August 6th, the plaintiff was scheduled to attend a preliminary hearing, but the Public Defender's Office did not take him to his hearing, so the plaintiff was denied an opportunity to argue the facts in his case and motion to have it dismissed. He was denied procedural due process or a probable cause hearing which was a violation of the his Fifth Amendment and Fourteenth Amendment Rights.

22

The **Fifth Amendment** states, "No person shall be.. deprived of life, liberty or property without due process of law... and the **14th** Amendment states.."No State shall...deprive any person of life, liberty or property with due process of law." Based on those guarantees, certain rights and protections apply to both civil and criminal legal proceedings and to both state and federal laws.

In Pugh v. Rainwater 572 F2d 1053 (1978), the court certified the case as a class action under Fed. Rule Civ. Proc. 23 (b) (2), and held that the Fourth and Fourteenth Amendments give all arrested persons charged by information a right to a judicial hearing on the question of probable cause. The District Court ordered the Dade County defendants to give the named plaintiffs an immediate preliminary hearing to determine probable cause for further detention.

42.

The plaintiff states that before the government can deprive a citizen of liberty, it must follow strict procedural rules regarding a criminal trial, like advising a citizen of the charges he is facing, allowing a citizen to cross-examine witnesses, guaranteeing a citizen's right to an attorney and requiring the state to prove any charges beyond a reasonable doubt. Some rules were not followed in the plaintiff's

23

case.

On or about August 13, 2018, a representative from the Public Defender's Office interviewed the plaintiff about his case. The representative asked the plaintiff to sign a document waiving his preliminary hearing. The document was dated August 6, 2018 which had passed, so the plaintiff mentioned the error, but the representative told him to sign it. So, the plaintiff signed it because he did not have an attorney.

**43.**

In addition, on August 6, 2018, Boyd falsely presented himself as the landlord to the Landlord Tenant court to apply for a Temporary Restraining Order(TPO). The plaintiff was served the TPO while in jail, but was not taken to the hearing on August 10, 2018, so the Landlord/Tenant court judge issued a TPO for Boyd which denied the plaintiff access to the residence without police assistance. (See exhibit "3A", Temporary Protective Order, "August 6, 2018")

**Bond Hearing**

**44.**

On August 21, 2018, after a bond hearing, the court released the plaintiff on two Signature Bonds.  He retrieved what was left of his property on August 23, 2018.

The Landlord/Tenant court set a second hearing for

On August 27, 2020, the plaintiff attended the TPO hearing. Boyd presented

himself as the landlord while R. Davis sat quietly in the audience. Boyd pled the

5th amendment and did not answer the plaintiff's questions about his property and

the allegations. But Judge Houston extended the TPO for two months, knowing

Boyd refused to answer the plaintiff's questions. The TPO was issued and

extended based on lies and falsification.

### Indictment

### 45.

On August 24, 2018, the plaintiff was indicted. Before he was indicted, his

public defender told him he would be indicted, after the petitioner explained his

case to her. She did not listen to the plaintiff closely, so the plaintiff believes she

made no effort to defend him in court despite the videotape evidence, the

contradictions in the police report, and the procedural violations.

### Arraignment

### 46.

On November 19, 2018, the plaintiff was arraigned. His arraignment hearing

had been rescheduled three times.. The public defender, stand-in, told

the plaintiff the prosecutor was seeking 10 years, but was offering two years.

He did not attempt to defend the plaintiff. When the plaintiff told him that Boyd

lied and had an extensive record in Florida, the public defender said "Boyd's

criminal record was not admissible". But to make matters worse, when the plaintiff

was called to plea, the public defender abandoned him and disappeared; he did

not defend or represent the plaintiff. He simply vacated or exited the courtroom

leaving the plaintiff without representation. His failure to defend the plaintiff

violated his Sixth Amendment Right to counsel. He was a court assigned public

defender. The public defender's decision violate the plaintiff's Sixth Amendment

right made the city liable.

47.

**In Pembaur v. City of Cincinnati ET Al., 473 U.S. 469 (1986),** the Supreme

Court stated, ….With this understanding, it is plain that municipal liability may be

imposed for a single decision by municipal policymakers under appropriate

circumstances. No one has ever doubted, for instance, that a municipality may be

liable under § 1983 for a single decision by its properly constituted legislative body

— whether or not that body had taken similar action in the past or intended to do

so in the future — because even a single decision by such a body unquestionably

26

constitutes an act of official government **policy.**

The plaintiff was denied another chance to present the facts of his case to a judge who could have dismissed it.

### Frederick Bushau Boyd's Arrest

#### 48.

On March 28, 2019, Frederick B. Boyd was arrested by the Georgia Tech Police Department and charged with Robbery by force, battery and Aggravated Assault. He spent three months in jail. The Aggravated Assault charge was dismissed and he received five years probation for the Robbery by force and battery charges. This information was either withheld by the prosecutor or shared with the plaintiff's attorney who didn't file one motion or formerly object, which leads the plaintiff to conclude that the prosecutor, Jill Hartsfield and his Attorney Kenneth W. Muhammad plotted and conspired to suppress this evidence.

However, the prosecutor continued to use Boyd as a witness to secure a conviction against the plaintiff and continued the case for three years. This behavior violated plaintiff's Sixth Amendment Right to a "speedy trial".

#### 49.

In addition, the prosecutor, Jill Hartsfield, violated the plaintiff's "Fourteenth Amendment Right to Equal Protection Under the law". When Boyd was charged with Robbery by Force, Aggravated Assault and Simple battery he became a

defendant based on accusations made by Georgia Tech students that he confessed to at the same time the plaintiff was a defendant facing felony charges accused by Boyd.

The State dropped the charges against Boyd but continued to use him as a witness against the plaintiff, but did not drop the charges against the plaintiff that were based on Boyd's accusation.

50.

The plaintiff was not treated equally under the law. Boyd's arrest and charges were exculpatory evidence.

The plaintiff states "the equal protection clause" is found in Section 1 of the Fourteenth Amendment to the U.S. Constitution and, at its base, prohibits governments from applying or passing laws that target or otherwise treat similarly situated individuals differently. Specifically, the equal protection clause states that: No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws.

In the case of *Colon,* 60 N.Y.2d at 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248. "The presumption may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." *Id.* at

28

82-83, 468 N.Y.S.2d 453, 455 N.E.2d 1248. Thus, in order for a plaintiff to

succeed in a malicious prosecution claim after having been indicted, "he must

establish that the indictment was produced by fraud, perjury, the suppression of

evidence or other police conduct undertaken in bad faith." *Id.* at 83, 468 N.Y.S.2d

453, 455 N.E.2d 1248.

51.

The plaintiff states the prosecutor's continuing his case in violation of the

Fourteenth Amendment was malicious prosecution because there was no evidence

that he committed a crime, he was falsely arrested without probable cause, he was

denied counsel and treated differently from his accuser. The plaintiff's charges

were dismissed in May 2021 for lack of evidence.

**Court Hearing: April 25, 2019**

**52.**

The next hearing date was April 25 2019, the court judge ordered the prosecutor

to produce the Discovery requested. The Prosecutor's office played "Discovery

Tag" with the plaintiff's attorney. In other words, the prosecutor told plaintiff's

attorney that the public defender had discovery, but when he spoke to the public

29

defender, she told him that the prosecutor had Discovery.

According to the plaintiff's attorney this went on until February 25, 2020,

the date the current court judge ordered the prosecutor to produce

Discovery.  But, the plaintiff's attorney, Kenneth Muhammad did not "intensely

pursue" Discovery. He did not file one motion, make a request on record in writing

or request a court date. He allowed an entire year to pass without doing anything.

He knew the prosecutor personally and had other clients. According to attorney

Muhammad, he received Discovery in late February 2020. On March 15, 2020, the

court shut down due to the Corona virus-19.

## Court Hearing: February 2020

### 53.

The court issued a February 2020 hearing date to discuss the status of the

plaintiff's case. The plaintiff's Attorney Kenneth W. Muhammad did not request

the hearing and did not allow the plaintiff to enter the courtroom. He told the

plaintiff to wait outside in the hallway.

The plaintiff was excluded from his hearing and did not hear what was

discussed. He believes the Prosecutor and Attorney Muhammad knew about

Boyd's criminal record, but did not dismiss the charges or inform the court of

his criminal activity. The plaintiff's former attorney Kenneth W. Muhammad

knew or should have known or been informed of Boyd's crimes and motioned for a
dismissal, but he did not.

### 54.

This information was vital to the plaintiff's defense and exculpatory. Since,
April 25, 2019, the plaintiff's former attorney did not file one motion or make an
attempt to resolve his case. Attorney Muhammad clearly stated to the plaintiff that
he was not going to file any motions. Attorney Muhammad did not discuss the
facts with the plaintiff in detail or show him the police videotapes. The record is
void of motions. The plaintiff's attorney Kenneth Wade Muhammad intentionally
sabotaged his case. The credibility of the plaintiff's accuser should have been
raised in court.

### April 2021: New Attorney case dismissed

55.

After almost three years of nothing, the plaintiff hired a new attorney in April
2021. She submitted documents and requests for Discovery asking for the
"evidence". The former prosecutor was removed. Surprisingly, the plaintiff's case
had two judges and three prosecutors. His new attorney talked to the new
prosecutor and he agreed to dismiss the plaintiff's case on May 20, 2021. He
informed her of the Boyd's criminal activity. The prosecutor dismissed the
plaintiff's case because there was no evidence. The only basis for the prosecution
was a lie made by a violent criminal who robbed and assaulted Georgia Tech

college students. **(See exhibits "1A and 1B")**

At all relevant times, Defendant Swann was acting under color of law and under color of authority as a police officer; And at all relevant times the City of Atlanta employees, Public Defenders, Prosecutors including Jill Hartsfield and agents or servants of the City of Atlanta, Georgia were acting as employees of the City. Plaintiff claims damages under 42 U.S.C. 1983 for injuries set forth above against Defendant Aaron Swann.

…..Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

### COUNT I

### UNDER U.S.C 1983,
### DEFENDANT AARON SWANN VIOLATED THE PLAINTIFF'S FOURTH WHEN ARRESTING HIM WITHOUT PROBABLE CAUSE.

Plaintiff re-alleges and incorporates by reference 9-22

The Fourth Amendment requires that an arrest be made on probable cause, even when the arrest is made pursuant to an arrest warrant. Whether or not there is probable cause typically depends on the totality of the circumstances, meaning everything that the arresting officer knows or reasonably believes at the time the arrest is made.

Defendant Swann falsely arrested and imprisoned the plaintiff without probable cause based on the word of a convicted felon and in retaliation for a verbal complaint made by the plaintiff.

Defendant Swann knew R. Davis violated the law because Boyd admitted that the landlord illegally entered the plaintiff's room and took a picture of his handgun clip when showing him a captured image on his cell phone. This is prior knowledge.

The Fourth Amendment states the "totality of the circumstances". Defendant Swann should have considered everything; Boyd said, "The landlord went into his room and took a picture of his handgun clip, and that is how I know he's got a gun." This admission states prior knowledge which opens the door of falsification and raises a reasonable doubt; he ignored Debra Wade's statement that she did not hear any threats through a wall coming from people she did not see, which

contradicts Boyd's statement that he was threatened, which was the reason for the

criminal escalation. But, the plaintiff did not point a gun at Boyd. He lied.

Additional circumstances, Boyd made the same accusation against the plaintiff

that two people made against another person at 329 Holderness Street; the landlord

asked Defendant Swann to illegally evict the plaintiff on August 4, 2018;

Defendant Swann had prior knowledge of this request; Boyd's statement that the

plaintiff took his handgun out of his pants and put it in this trunk was a lie because

the plaintiff wore shorts that was unable to conceal a handgun.

Defendant Swann falsified the facts by adjusting the chronological order of the

events. For example, he didn't state that he walked away three times, he didn't

state the investigators arrived while he was unseen, he didn't state that he walked

away when Boyd shouted it's in the car. The police camera videotape captured all

of these facts.

In the case of *Colon,* 60 N.Y.2d at 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248.

"The presumption may be overcome only by evidence establishing that the police

witnesses have not made a complete and full statement of facts either to the Grand

Jury or to the District Attorney, that they have misrepresented or falsified

evidence…………

There were contradictory statements. But there was no evidence that plaintiff "pointed a gun". When Defendant questioned the plaintiff about having or owning a gun, the plaintiff said "no" because he was medicated by sleeping pills and didn't understand Defendant Swann, but he knew the plaintiff did not understand him during his interrogation because he said, "I know. That is why I did not charge you with falsification. A second contradictory statement is in the police report. Defendant Swann reported in his "Statement of Witness" that "The accused pulled a handgun out of his waistband, pointed it at the victim and threatened to kill him. The victim reported the crime to police and pointed out that the accused still had the handgun in his vehicle."

But in the actual police report Defendant Swann wrote, "Mr. Boyd indicated that he wished to press charges however at this point I did not have a witness or a weapon. Since Boyd told Defendant Swann that the plaintiff's gun was in his car when he arrived, then Defendant Swann didn't have a reason to state "that he did not have a witness or a gun". (Incident Narative, para. 2).

Defendant Swann manipulated the "flow" of facts to structure his narrative. That is falsification of facts and evidence.

35

Lastly, Defendant escalated the charges from misdemeanor to felony without facts or reason to force the plaintiff to plea in retaliation of the complaint the plaintiff filed against him on August 4, 2018. The escalation from misdemeanor to felony caused the plaintiff's deprivation because he was denied housing, professional employment and was the main reason he did not receive his insurance license because it was denied because of the felony charges.

The plaintiff's deprivation and monetary loss of income are due to felony charges that stopped him from passing background checks, which disqualified him from professional employment. Also, the plaintiff was denied his Insurance License because of felony charges and the SBA denied a PPP loan of $50,000 because he was charged with two felonies and could not answer no to loan application questions when applying for the loan that asked "Are you under indictment or Have you been charged with a felony?"

All of the plaintiff's deprivations and income loss were directly connected to Defendant Swann's false felony charges that were dismissed. Indeed, it is clear that Defendant Swann caused the plaintiff's deprivation and the plaintiff is entitled to relief.

## COUNT II

### UNDER U.S.C 1983, DEFENDANT SWANN VIOLATED THE PLAINTIFF'S FOURTEENTH AMENDMENT RIGHT TO "EQUAL PROTECTION UNDER THE LAW".

Plaintiff re-alleges and incorporates by reference 24-32

The Plaintiff states the Fourteenth Amendments guarantees that:

All persons born or naturalized in the United States, and subject to the jurisdiction

thereof, are citizens of the United States…. No State shall make or enforce any law

which shall abridge the privileges.; ………..nor shall any State deprive any person

……….of life, liberty, or property, without due process of law; nor deny to any

person within its jurisdiction the equal protection of the laws………..

Boyd's stated the R. Davis entered the plaintiff's room and took a picture of his

handgun clip, but not his handgun. That was burglary. "Burglary" is Georgia Code

16-7-1(b), which states "A person commits the offence of burglary in the first

degree when, without authority and with the intent to commit a felony or theft

therein….or other structure designed for use as the dwelling of another."

According to the police report R. Davis entered the plaintiff room without his

permission in the early morning of August 5, 2018, searched it and took a picture

of his handgun clip. Defendant Swann was informed of a crime or well-

established law but did not arrest Boyd or R. Davis. But he arrested the plaintiff

and charged him with two felonies. (See police report, exhibit "8A")

The second violation was "Invasion of Privacy" which reads, O.C.G.A 16-11-

62 (2) … Any person, through the use of any device, without the consent of all

persons observed, to observe, photograph or record…

The third violation was "Conspiracy to commit a crime", which reads

O.C.G.A. 16-4-8 (2010) Conspiracy to commit a crime, which states: A person

commits the offense of conspiracy to commit a crime when he together with one or

more …

When Defendant arrested the plaintiff without probable cause based on the

word of a convicted felon and without arresting R. Davis for his violations of the

law, he violated the plaintiff's Fourth and Fourteenth Amendment Rights and

caused the plaintiff deprivation.

## COUNT III

**UNDER 42 U.S.C. 1983, THE CITY OF ATLANT PUBLIC DEFENDER
OFFICE VIOLATED THE PLATIFF'S FIFTH AMENDMENT RIGHT OF
PROCEDURAL DUE PROCESS WHEN DENYING HIM A PROBABLE
CAUSE HEARING.**

Plaintiff re-alleges and incorporates by reference 41-42

The plaintiff did not receive a preliminary hearing to determine probable cause. His probable cause hearing was set for August 6, 2018, but a public defender did not appear to take him to his hearing, so he waited until his bond hearing but the facts were not examined to determine probable cause. But, the City falsely notated in the record that a preliminary hearing had taken place without the plaintiff, without a courtroom and without a judge.

But, on August 13, 2018 a public defender met with the plaintiff and asked him to sign a waiver waiving his preliminary hearing. This violation of plaintiff's Fourth and Fifth Amendment Rights contributed to his deprivations. A relevant Supreme Court case is Gerstein v. Pugh ET AL.

**In Gerstein v. Pugh ET AL, 420 U.S. 103(1975),** the Supreme Court stated, "… that the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention, and we accordingly affirm that much of the judgment. The Court continued……, The sole issue is whether there is probable cause for detaining the arrested person **pending** further proceedings. This issue can be determined reliably without an adversary hearing. The standard is the same as that for arrest.[21] That standard—probable cause to believe the suspect has

committed a crime.........

The Court continued, "Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard. .......

Also, In Pugh v. Rainwater.... The court certified the case as a class action under Fed. Rule Civ. Proc. 23 (b) (2), and held that the Fourth and Fourteenth Amendments give all arrested persons charged by information a right to a judicial hearing on the question of probable cause.

Denying the plaintiff a probable cause hearing contributed to his deprivation and his monetary losses because the plaintiff remained in jail until August 20, 2018 but the felony charges that would have been dismissed remained on his record for four years.

## COUNT IV

### UNDER 42 U.S.C. 1983, THE CITY OF ATLANTA PUBLIC DEFENDER'S VIOLATED THE PLAINTIFF'S SIXTH AMENDMENT RIGHT TO COUNSEL.

Plaintiff re-alleges and incorporates by reference 46.

The statute itself is fairly straightforward. It says that any government agent who

40

violates someone's federally protected rights "shall be liable to the party injured." In other words, Section 1983 allows anyone whose constitutional rights are violated by a state actor to bring a lawsuit against them in federal court to get damages for their injury. And as even the Supreme Court has acknowledged, "the statute, on its face, does not provide for any immunities."

On November 19, 2018, the plaintiff went to his arraignment. He had a public defender assigned by the court. His public defender informed him about the prosecutor's offer, which was two years in prison. The plaintiff refused so his public defender abandoned him and left the courtroom. The plaintiff did not have representation. He pled not guilty and his case was continued. The plaintiff was entitled by law to representation. His case should have been dismissed on that day. The public defender's egregious behavior contributed to the plaintiff deprivation because his case was continued.

In **Gideon v. Wainwright 372 US 335, 83 S. Ct. 792, 9L. Ed 2d 799, Supreme  Ct  1963, the Court** held ''that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him.''

## COUNT V

**UNDER 42 U.S.C. 1983, THE PLAINTIFF BRINGS A FORTH AMENDMENT CLAIM FOR MALICIOUS PROSECUTION AND BRINGS FOURTEENTH AMENDMENT CLAIM  FOR MALICIOUS PROSECUTIONAGAINST THE PROSECUTOR'S OFFICE FOR FAILING TO PROVIDE "EQUAL PROTECTION UNDER THE LAW."**

Plaintiff re-alleges and incorporates by reference 48-51.

On March 28, 2019, Frederick B. Boyd was arrested by the Georgia Tech Police Department and charged with Robbery by force, battery and Aggravated Assault. He spent three months in jail. The Aggravated Assault charge was dismissed and he received five years probation for the Robbery by force and battery charges. This information was exculpatory. The court should have been informed and an assessment of Boyd's credibility should have been undertaken. However, an assessment was not done and Boyd's criminal behavior was not mentioned.

The plaintiff states "the equal protection clause is found in Section 1 of the Fourteenth Amendment to the U.S. Constitution and, at its base, prohibits governments from applying or passing laws that target or otherwise treat similarly situated individuals differently. Specifically, the equal protection clause states that: No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws.

However, the prosecutor continued to use Boyd as a witness to secure a

conviction against the plaintiff and his case was continued for three years. The State dropped the charges against Boyd but continued to use him as a witness against the plaintiff, but did not drop the charges against the plaintiff that were based on Boyd's accusation.

When Boyd was charged with Robbery by Force, Aggravated Assault and Simple battery, he became a defendant based on accusations made by Georgia Tech students that he confessed to at the same time the plaintiff was a defendant facing felony charges based on accusations made by Boyd. The Fourteenth Amendment prohibits governments from applying or passing laws that target or otherwise treat similarly situated individuals differently. The plaintiff and Boyd were similarly situated under the Fourteenth Amendment.

The prosecutor's behavior was "Intentional Discrimination" against the plaintiff who is in a protected class, Bond v. Atkinson, 728 F.3d 690 (7th Cir. 2013).The plaintiff was treated differently "under the law" because his charges of Aggravated Assault were not dismissed when Boyd's charges of Aggravated Assault was dismissed. At that point, his prosecution became malicious in violation of the Fourteenth Amendment. The plaintiff's charges were dismissed on May 20, 2021, three years later.

In Thompson v. Clark,  142 S. Ct. 1332 (2022) the Court held, to demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment under 1983 for malicious prosecution, a plaintiff need not show that

the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that his prosecution ended without a conviction. Thompson has satisfied that requirement here.

The plaintiff states that his deprivation was caused by the prosecutor who maliciously prosecuted him without probable cause and who hid exculpatory evidence that would have proven his innocence, while discriminating against him and prosecuting his case for three years without evidence.

Indeed, the prosecutor's actions caused and continued the plaintiff's deprivation because the felony charges were continued until 2022 and the felony charges were the plaintiff's "axe of deprivation" that caused his loss of income and other deprivations. If the prosecutor has dismissed the plaintiff's charges in March 2019 when Boyd's charges were dismissed, the plaintiff could have recovered and returned to his job.

In Addition, the prosecutor extended the plaintiff's deprivation by allowing the felony charges to remain on his record for three years. Sustained public access to criminal records makes it harder for people to obtain jobs. See, e.g., Devah Pager, "The mark of a Criminal Record, 108 Amer.J. of Soc. 937 (2003); and Commonwealth v. Pon, 469 Mass. 297, 307 (2014) ("Gainful employment is crucial to preventing recidivism and criminal records have a deleterious effect on access to employment.

**As a direct and proximate result of the acts of Defendants, Plaintiff suffered the following injuries and damages:**

44

a. Loss of job as an insurance agent, Information Technology, and all professional positions due to false criminal charges that labeled the plaintiff a felon and prevented him from passing background checks; Loss of future professional employment and income for four years.
b. Violation of his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments
c. Malicious prosecution without probable cause; suppression of evidence
d. Loss of valuable personal property: personal creative writings and books
e. Loss of his freedom; false arrest and false imprisonment for 17 days
f. Poverty, homelessness

Federal Constitutional rights of Plaintiff violated:

a. Freedom from unreasonable seizure of his person and false arrest: Fourth Amendment, Fifth, Sixth and Fourteenth Amendment violations.
b. Denial of due process relating to a preliminary hearing
c. Denial of representation during arraignment: Sixth Amendment
d. Denial of equal protection: Fourteenth Amendment
e. Arrest and imprisonment without Probable cause

## **PRAYER FOR RELIEF**

**WHEREFORE, Plaintiff respectfully prays and requests this Court to grant the following relief:**

A. Enter judgment in favor of Plaintiff and against Defendant.

B. Award Plaintiff compensatory and punitive damages against Defendant Swann and Public Defenders and the City of Atlanta in the amount $1,600,000 for loss of job, wages and future wages; for loss of employment from 2018 to 2022 because the plaintiff could not pass a background check to secure a professional job in his fields of study and Treble damages; punitive damages of $1,000,000 for Malicious prosecution and egregious violations of his Fourth, Fifth, Sixth and Fourteenth Amendment Rights.

C. Award Plaintiff's counsel reasonable attorneys' fees and costs pursuant to 42 U.S.C 1988 and any other applicable provisions of law;

## **BENCH TRIAL DEMAND**

Plaintiff demands a Bench trial, pursuant to Constitution of the United States, as

to all claims for damages.

Dover Davis Jr.,
Pro Se
P. O. Box 150485
Atlanta, Georgia 30315
762.887.7959